*Decision will be entered under Rule 50.*

FERNAND C. A. ADDA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8834. Promulgated February 10, 1948.

*Mitchell B. Carroll, Esq., Rollin Browne, Esq.,* and *John J. Smith, Esq.,* for the petitioner.

*William F. Evans, Esq.,* for the respondent.

274

OPINION.

ARNOLD, *Judge*: The first issue is whether in the taxable year 1941 the petitioner, a nonresident alien, was engaged in trade or business

in the United States or had an office or place of business therein, within the meaning of section 211 of the Internal Revenue Code, as applicable in 1941. Under section 211 (b) [1] the phrase "engaged in trade or business within the United States" does not include the effecting of transactions in the United States in commodities through a resident broker. The petitioner contends that this provision applies and that the profits of the transactions effected during 1941 for his account are not taxable to him. The respondent contends that, since the petitioner was dependent upon the services of his brother and without them could not have operated to the extent he did, the gains realized to his account in 1941 are taxable to him. The respondent says that the petitioner was doing business in the United States. The respondent does not contend that the petitioner had an office or place of business in the United States in the taxable year.

Prior to the enactment of the Revenue Act of 1936, profits realized by a nonresident alien through trading on commodity exchanges in the United States were taxable as income derived from sources in the United States. *Zander & Cia, Ltd.*, 42 B. T. A. 50. Section 211 of the Revenue Act of 1936, similar to section 211 of the code as applicable in 1941, changed the basis of taxing nonresident aliens. Senate Report No. 2156, 74th Cong., 2d sess. on the Revenue Bill of 1936 explains the change (p. 21) :

Your committee concurs in the main in the substantial changes made by the House bill in our present system of taxing nonresident aliens and foreign corporations. * * * In section 211 (a) it is proposed that the tax on a nonresident alien not engaged in a trade or business in the United States and not having an office or place of business therein, shall be at the rate of 10 per cent on his income from interest, dividends, rents, wages, and salaries and other fixed and determinable income, with no allowance for the deductions from gross income and credits against net income allowed to individuals subject to normal tax and surtax on net income. * * * Such a nonresident alien will not be subject to the tax on capital gains, including so-called gains from hedging transactions, as at present, it having been found administratively impossible effectually to collect this latter tax. It is believed this exemption from tax will result in considerable additional revenue from the transfer taxes and from the income tax in the case of persons carrying on the brokerage business. * * *

---

[1] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.

* * * * * * *

(b) UNITED STATES BUSINESS OR OFFICE.—A nonresident alien individual engaged in trade or business in the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a). As used in this section, section 119, section 143, section 144, and section 231, the phrase "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such phrase does not include the effecting of transactions in the United States in stocks, securities, or commodities through a resident broker, commission agent, or custodian.

Trading in commodities for one's own account for profit may be a "trade or business" if sufficiently extensive. *Fuld* v. *Commissioner*, 139 Fed. (2d) 465; *Norbert H. Wiesler*, 6 T. C. 1148; affirmed without discussion of this point, 161 Fed. (2d) 997. The respondent determined that the petitioner was engaged in trade or business in the United States. While the number of transactions or the total amount of money involved in them has not been stated, it is apparent that many transactions were effected through different brokers, several accounts were maintained, and gains and losses in substantial amounts were realized. This evidence shows that the trading was extensive enough to amount to a trade or business, and the petitioner does not contend, nor has he shown, that the transactions were so infrequent or inconsequential as not to amount to a trade or business. Had the petitioner come to the United States and effected these transactions while here for a sufficient period he would be taxed upon the profits of these transactions, for he would lose the status of nonresident alien and section 211 would not be applicable. He seeks to accomplish in this case, through his brother as his agent, what he could not accomplish directly by himself, that is, to effect transactions by decisions made in the United States by one who is not a resident broker, commission agent, or custodian, and not be taxed upon the gains. In effect he is engaging, by his agent, in trade or business in the United States. In *Helvering* v. *Boekman*, 107 Fed. (2d) 388, it was held that services performed in the United States by a clerk employed by a nonresident alien in transmitting orders from the alien to resident brokers in commodities for foreign customers of the alien were personal services performed in the United States on the alien's account, rendering the income derived through these services taxable to the alien. Although here the petitioner is not performing personal services for others, the effect of the arrangement between the petitioner and his brother, from a tax standpoint, was the same as if the petitioner were in the United States and directly engaged in the business of trading in commodities. It is not material that this arrangement was an accommodation to overcome the difficulties of communication resulting from the war. The petitioner was under no necessity of trading on commodity exchanges in the United States, but was engaged in this trading solely for profit, at least during the years here involved.

It seems obvious from a reading of the statute that the Congress, in allowing nonresident aliens to effect transactions with brokers directly from abroad without being taxed on their gains, did not intend to permit a nonresident alien to establish an agent in the United States to effect transactions for his account and escape taxation of the profits. Section 211 (b) refers to a "nonresident alien individual engaged in trade or business in the United States or having an office or place of

business therein." While the petitioner did not have a physical "office or place of business" in the United States within the common understanding of those terms (*Linen Thread Co., Ltd.*, v. *Commissioner*, 128 Fed. (2d) 166, affirming B. T. A. memorandum opinion; *Aktiebolaget Separator*, 45 B. T. A. 243; *Recherches Industrielles, etc.*, 45 B. T. A. 253), he had what was a more potent means of doing business in the United States, since his brother was authorized to use his own discretion. In each of the cited cases a physical office existed, but the taxpayer's representatives there performed acts of far less consequence in the production of the taxpayer's income than here. The intent of the Congress with respect to taxing nonresident aliens is further indicated by section 219 of the Internal Revenue Code, which provides that a nonresident alien individual member of a partnership shall be considered as engaged in a trade or business within the United States if the partnership is so engaged. Under the law of partnership each partner is the agent of each other partner within the scope of the partnership business. Accordingly, a nonresident alien partner is treated as being engaged in trade or business within the United States, as the resident members of the partnership, as his agents, are engaged in trade or business in the United States. While no partnership is here involved, the petitioner is doing business in the United States through a resident agent as fully as a nonresident alien partner may do business through the agency of a resident partner. The statute granting the exclusion of profits from a nonresident alien's commodity transactions in the United States, being an exemption provision, is to be strictly construed. We hold that it is not applicable here, where the alien has an agent in the United States using his own discretion in effecting transactions for the alien's account. Through such transactions the alien is engaging in trade or business within the United States, and the profits on these transactions are capital gains taxable to him.

The respondent concedes on brief that the petitioner may deduct from the short term capital gains realized in 1941 on account of the transactions effected by Joseph Adda the losses resulting from his transactions effected directly with his brokers and amounting to $12,782.67.

The petitioner contends that he is entitled to a short term capital loss carry-over from 1940 under section 117 (e) of the Internal Revenue Code [2] to the extent of $16,024.07. The petitioner, in 1940, had net income from sources within the United States, admittedly taxable, in this amount. In transactions involving the purchase and sale of commodities through resident brokers, he sustained short term capital

---

[2] (e) NET SHORT-TERM CAPITAL LOSS CARRY-OVER.

If any taxpayer sustains in any taxable year * * * a net short-term capital loss, such loss (in an amount not in excess of the net income for such year) shall be treated in the succeeding taxable year as a short-term capital loss * * *

losses in excess of short term capital gains in the amount of $40,361.15. He had another short term capital gain of $27.05.

The respondent contends that the petitioner's claim can not be allowed, saying that such losses are allowable only if the profit, had the transactions resulted in profit, would have been taxable, and that the petitioner has not proved that the transactions effected in 1940 which resulted in losses were in the same category as those which resulted in profit in 1941. We think the evidence sufficiently shows that the transactions in 1940 were of the same nature as those in 1941. Joseph Adda testified that shortly after the war broke out he called on the brokers to introduce himself and that he first gave orders to one of the brokers in December 1939 and to another in May 1940. The petitioner, in February 1940, wrote an authorization to one broker in New York to accept instructions from Joseph Adda and confirmed the transactions previously effected by Joseph Adda. There appears to be no basis for supposing that the transactions in 1940 were of a different nature from those in the taxable year. It happened that in 1940 the petitioner realized a gain on his direct transactions, but those effected by his brother resulted in a loss exceeding this gain. If the petitioner was engaged in trade or business in the United States in 1941, as determined by the respondent, and we have concluded that he was, he was likewise engaged in trade or business in the United States in 1940. The petitioner's net short term capital loss in 1940, to the extent of his taxable income for that year, may be carried over and treated as a short term capital loss in 1941.

Reviewed by the Court.

*Decision will be entered under Rule 50.*