FERNAND C. A. ADDA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14170. Promulgated June 30, 1948.

*Mitchell B. Carroll, Esq., John J. Smith, Esq.,* and *Rollin Browne, Esq.,* for the petitioner.

*William F. Evans, Esq.,* for the respondent.

## OPINION.

This case involves income tax for the taxable year 1943. Deficiency was determined in the amount of $3,262.70, and the petitioner alleges overpayment of tax in the amount of $2,050.74 (including $78.88 interest). The question presented is whether petitioner, a nonresident alien individual, was engaged in trade or business in the United States during the calendar year 1943, within the meaning of section 211 (b) of the Internal Revenue Code. A stipulation of most of the facts involved was filed, is adopted by reference, and, so far as deemed necessary of consideration on the issue presented, will be set forth, with other findings from evidence presented, in our findings of fact.

### FINDINGS OF FACT.

1. The petitioner, Fernand C. A. Adda, is a national of Egypt who went to France in 1940 and resided in France during the taxable years 1941, 1942, and 1943. He has never been a resident of the United States, nor a resident of North America, South America, or Central America, or of the West Indies or the Hawaiian Islands.

2. For a number of years prior to 1941 petitioner made trades in commodities on commodity exchanges in the United States through resident brokers, trading in cotton, wool, grain, silk, and hides. In August 1939 the petitioner discussed with his brother, Joseph A. Adda, who intended to visit the United States, the possibility that war might affect petitioner's ability to communicate with his brokers in the United States, and authorized Joseph A. Adda, in case of such interruption of communications, to act for the petitioner in placing orders for the purchase or sale of commodities. The petitioner outlined to his brother the general trading policy which he desired to have followed. Petitioner told Joseph A. Adda he had credits with the firms of George H. McFadden & Bro., George F. Jones & Son, and Bond, McEnany & Co., and asked Joseph to advance the necessary funds if the market went against him and he could not forward money. Joseph A. Adda was not compensated by the petitioner for his services in connection with the commodity transactions.

3. On February 15, 1940, the petitioner wrote from Alexandria, Egypt, to the firm of George H. McFadden & Bro. as follows:

You are to consider this letter your full authority to accept orders in commodity futures from MR. JOSEPH A. ADDA and to enter any resultant trades in an account to be known as "FERNAND C. A. ADDA, a/c JOSEPH A. ADDA". It is hereby understood that I assume full moral and financial responsibility for this account in the same manner as all other accounts standing in my name on your books. I also hereby confirm that all trades already entered in "FERNAND C. A. ADDA, a/c JOSEPH A. ADDA" on orders of MR. JOSEPH A. ADDA also have my approval and guarantee.

You are hereby also advised that all formal confirmations covering trades executed on orders from MR. JOSEPH A. ADDA and placed in "FERNAND C. A. ADDA, a/c JOSEPH A. ADDA" are to be forwarded to MR. JOSEPH A. ADDA, who has my authority to approve same. Likewise all liquidation statements, and all other accounting records in connection with this account are to be forwarded to MR. JOSEPH A. ADDA.

You are also to consider this letter your full authority to transfer from any of my other accounts with you such funds as in your opinion are necessary to properly protect the account designated as "FERNAND C. A. ADDA, a/c JOSEPH A. ADDA". In addition you are authorized to make payments to MR. JOSEPH A. ADDA or to anyone else he may designate, without any further approval on my part, and to charge such payment or payments to such of my accounts as seem proper to you.

4. On January 27, 1941, petitioner cabled Bond, McEnany & Co. as follows: "Accept all instructions Joseph Adda regarding my accounts. Confirm." Petitioner had fallen into the hands of the Germans in France in December 1940, and it was while under surveillance in a hospital, that he sent the above message to Bond, McEnany & Co. regarding the petitioner's accounts.

5. During the taxable years 1941, 1942, and 1943, on account of conditions brought on by the war, the petitioner was cut off part of the time from satisfactory means of communication with his brokers and his brother in the United States. In 1941 he was able to send some direct orders to brokers in the United States, and during that year other commodity transactions were effected for his account by his brother, Joseph A. Adda, then a resident of New York, New York, resulting in gains in excess of losses, which gains were the subject of a proceeding entitled *Fernand C. A. Adda*, Docket No. 8834, before the Tax Court of the United States, decision in which was promulgated February 10, 1948, and published at 10 T. C. 273. In that proceeding it was found by the Tax Court that petitioner, during 1940 and 1941, was a nonresident alien, engaged in trade or business in the United States.

6. During the taxable year 1943 the petitioner had commodity accounts in the United States with the firms of Bond, McEnany & Co. and George H. McFadden & Bro., who, during the calendar years 1942 and 1943, were brokers resident in the United States and had their offices in New York, New York. The commodities in the accounts of Bond, McEnany & Co., and George H. McFadden & Bro., as aforesaid, were acquired by the petitioner in November and December 1942, pursuant to orders placed with said brokerage firms for the account of petitioner by Joseph A. Adda during the period when petitioner was cut off from communication with his brother and with his brokers.

7. On or about November 13, 1942, the accounts which petitioner had with the firms of Bond, McEnany & Co. and George H. McFad-

den & Bro. were blocked, pursuant to Executive Order No. 8389. Thereafter, George H. McFadden & Bro. and Bond, McEnany & Co. made application to the Treasury Department for license to liquidate the accounts of petitioner. The application by George H. McFadden & Bro., so far as pertinent to the applicant's letter of November 13, 1942, recited the blocking on the applicant's books of several accounts of Fernand C. A. Adda, and that all of the commodity futures contracts for him, except account No. 3, had been liquidated and reported, with the exception of "Bought 25,000 May 1943 Rye Chicago," and that application was made for a license to close out this long position. The application of Bond, McEnany & Co. recited, so far as here pertinent, that they desired to:

Liquidate the following purchases of cotton futures on the New York Cotton Exchange:

| | | | | |
|---|---|---|---|---|
| 100 bales | July | at | | 18. 12 |
| 100 | " | " | " | 18. 04 |
| 100 | " | " | " | 17. 94 |
| 100 | " | " | " | 17. 99 |
| 300 | " | " | " | 18. 33 |
| 200 | " | October | at | 18. 50 |
| 300 | " | " | " | 18. 30 |
| 100 | " | " | " | 18. 35 |
| 200 | " | " | " | 18. 54 |
| 300 | " | " | " | 18. 43 |
| 300 | " | " | " | 18. 41 |

The application further recited that these purchases were blocked by the applicant as of February 26, 1943, and that:

* * * Fernand C. A. Adda, an Egyptian citizen, has been doing business through us for many years. In recent years we have been mailing advices on transactions in Fernand C. A. Adda's account to his brother, Joseph A. Adda, (resident of the United States since August of 1939, and who has already received his first United States citizenship papers) at his address, 400 East 52nd Street, New York, N. Y.

We request that this license be granted for the liquidation of the above mentioned 2100 bales of cotton futures through October of 1943, the life of the oldest open options, in order that the sales may be made at propitious times, the deficit or equity resulting from such liquidation to be placed in Fernand C. A. Adda's blocked account.

8. In the early part of 1943, the Treasury Department granted licenses as applied for to liquidate the commodity accounts of the petitioner. The licenses recited, in pertinent part (in the license to Bond, McEnany & Co.), "provided that the deficits and/or equities resulting from such liquidations are debited or credited to the blocked account for which the liquidation was consummated," and (in the license of Geo. H. McFadden & Bro.) "provided the resulting profit or loss, whichever the case may be, is credited or debited by you to the blocked account for which the sale was made,"

9. On February 2, 1943, pursuant to the license granted to them, George H. McFadden & Bro. closed out the petitioner's commodity account with them, consisting of 25,000 bushels of May 1943 Chicago rye, by selling said rye, which sale resulted in a short term capital loss to petitioner of $2,243.75. Such short term capital loss was not reported on the taxpayer's income tax return for the calendar year 1943.

10. Pursuant to the license granted to them, Bond, McEnany & Co. closed out petitioner's commodity account with them, consisting of 700 bales of July 1943 cotton and 1,200 bales of October 1943 cotton, by selling said cotton, which resulted in a short term capital gain to petitioner of $18,872.46, as follows:

| | | |
|---|---|---|
| 100 bales July cotton sold Apr. 5 | profit | $1,047.26 |
| 200 bales July cotton sold May 25 | " | 2,199.52 |
| 400 bales Oct. cotton sold May 29 | " | 3,029.04 |
| 100 bales July cotton sold June 2 | " | 1,112.26 |
| 100 bales July cotton sold June 22 | " | 947.26 |
| 100 bales July cotton sold June 23 | " | 957.26 |
| 100 bales July cotton sold June 24 | " | 992.26 |
| 300 bales Oct. cotton sold Aug. 7 | " | 3,856.30 |
| 200 bales Oct. cotton sold Aug. 26 | " | 1,664.52 |
| 300 bales Oct. cotton sold Sept. 28 | " | 3,066.78 |
| Short term capital gain | | 18,872.46 |

The above transactions, together with the long term net capital gain of $682.61, less carry-over of $8,545.61 from 1942, resulted in the net capital gain of $8,765.71 asserted in the deficiency notice. Such short term capital gain was not reported on the taxpayer's income tax return for the calendar year 1943.

11. The transactions and commodities referred to in paragraphs 9 and 10 hereof were of the kind customarily dealt in on an organized commodity exchange and of the kind customarily consummated at such place.

12. During the calendar year 1943 petitioner was a nonresident alien, and he did not individually, or through any agent, have an office or place of business of any kind in the United States of America, Alaska, or the Hawaiian Islands, at any time during the calendar year 1943.

13. Except for the transactions set forth in paragraphs 9 and 10, it is stipulated and agreed that petitioner was not otherwise engaged in trade or business in the United States during the calendar year 1943.

14. On February 20, 1945, the petitioner filed a United States income tax return on Form 1040 NB-a, for the taxable year 1943, with the collector of internal revenue for the second district of New York, and paid to the collector of internal revenue on that date the amount of $2,050.74, which amount represented a payment of the tax liability

shown to be due on the return in the amount of $1,971.86, together with interest thereon to the date of the payment in the amount of $78.88. On or about March 9, 1945, the taxpayer filed a second United States income tax return on Form 1040 NB-a for the calendar year 1943 with the collector of internal revenue for the second district of New York, and paid to said collector on the same day the amount of $1,879.08, which amount constituted the payment of the tax liability shown to be due on the return in the amount of $1,806.81, together with interest thereon to the date of the payment in the amount of $72.27. On or about September 18, 1945, the petitioner filed a claim for refund of income tax for the calendar year 1943 in the amount of $2,050.74 with the collector of internal revenue for the second district of New York, said amount of $2,050.74 being the amount paid by the petitioner in connection with the return filed by the petitioner on February 20, 1945. The refund claim recited, so far as pertinent, that it involved a check filed with a return in which the tax was inaccurately computed; that the check was sent to the Guaranty Trust Co. for clearance; and that, although the bank had been requested by letter on March 13, 1945, to notify Joseph A. Adda, the taxpayer's brother, before paying the check, through some error the instruction was not carried out and the bank paid the check, with the result that the Treasury has received the amount of two checks, to wit: $1,879.08 and $2,050.74.

Joseph A. Adda did not apply for a license to liquidate the transactions (described in paragraphs 9 and 10 of the findings of fact above) that were entered into in 1942. The brokers made the applications for licenses. They asked him about it and he told them that from the time of the freezing order he had had nothing to do with the business and that they should take the necessary steps, because he did not know what the implications of the Government were and that he did not want to have anything to do with it. He did not use his discretion in effecting the transactions or having them effected. He did not participate in the sales, because he had categorically told the brokers that since the freeze he did not want anything to do with the business. He gave no orders for the sale of any commodities for the petitioner's account. He did. in 1942, give the order for the purchase of the commodities that were involved in the sales in 1943. Elwood McEnany, senior partner of the firm of Bond, McEnany & Co., was a close friend of Fernand C. A. Adda and took upon himself the responsibility of the liquidation at his discretion. The reason Joseph A. Adda did not want to have anything to do with his brother's orders after the freezing order was that he was in the United States under an immigration visa and did not know the results or consequences after the freezing orders. He did not know how the prices

at which sales in 1943 were made were fixed.   He told the brokers that he would give no orders, would have nothing to do with it, and that it was their entire responsibility.   He did not know whether the funds were turned over to him.   He had, and still has, an account with Bond, McEnany & Co. himself, and he was often in their office as a customer.   The brokers did not consult him with reference to the sale of the rye.

OPINION.

· DISNEY, *Judge*: We held in *Fernand C. A. Adda*, 10 T. C. 273, that the petitioner was, through his brother Joseph A. Adda, engaged in trade or business in the United States in 1941.   The respondent contends that the same is true in 1943.   Petitioner, on the other hand, argues that our former decision rested on the fact that the brother, exercising authority and discretion given him by the nonresident alien, traded in substantial amounts on the stock exchanges in 1941, whereas under the evidence herein the brother had nothing whatever to do with the transactions in 1943, which were merely the liquidation of two stock exchange accounts; and, therefore, the nonresident alien did no business in the United States in 1943.   Unless Joseph A. Adda participated in the matter of the sales in 1943, on behalf of his brother, the brother was not engaged in trade or business in the United States, for merely selling through the broker was not so engaging in business.   *Fernand C. A. Adda, supra.*   After hearing all the evidence here, we must and do come to the conclusion that Joseph A. Adda was not a participant.   He testified unequivocally that he refused to have anything to do with the sales in 1943, that the brokers went on their own responsibility, and that, being in this country on an immigration visa, he did not know what the consequences or results were after the freezing order.   We can not see him in the light of an agent for his brother, as he was found to be in 1941.   He not only used no discretion in 1943, but he did nothing, upon his testimony, which is not contradicted.   The respondent argues, citing *Snyder v. Commissioner*, 295 U. S. 134, that gains realized from sales of property or property rights purchased in previous years, measured by the excess of the proceeds of sale over cost, constitute income taxable in the year in which the sales are made; and, therefore, he contends in effect that, because petitioner had, through his brother, purchased the property which was liquidated in 1943, sale thereof constituted engagement in trade or business in the United States.   The cited case seems to us to indicate nothing more than that income was realized from sale of property in the year of sale, and to be of no assistance here in deciding whether petitioner, because of some sales through

brokers, not participated in by his brother who formerly represented him, was engaged in trade or business in the United States.

We conclude and hold that petitioner was not engaged in the taxable year 1943 in trade or business in the United States, within the intendment of section 211 (b) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*