CHANG HSIAO LIANG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43978. Filed March 18, 1955.

*D. Nelson Adams, Esq.,* and *Frank H. Medinger, Esq.,* for the petitioner.
*Arthur L. Nims, Esq.,* for the respondent.

1042

1044

OPINION.

Opper, *Judge:* Petitioner, a nonresident alien, was not present in this country in 1946 nor, apparently, at any other time after he entered into the agency agreement in 1932. He left the management of his considerable account entirely to the discretion of his agent. The latter invested petitioner's funds in stocks and securities. He never acquired any hedges; never made short sales; and never purchased "puts" or "calls." His commission in excess of a fixed salary was based on total earnings of the account, regardless of source.

Purchase and sale activity in the account during 1946, the year in controversy, and during 1940, which far exceeded such activity in other years, is adequately explained by transitional changes in the industries represented by the securities immediately before and after American participation in World War II, when increased trading activity was not unusual in the routine conservation and management of investment portfolios. And, in spite of increased activity, even during the year in controversy the average holding period of the securities sold was 5.8 years. More than 90 per cent of the gross gain was derived from the sale of securities held for more than 2 years; and more than 40 per cent of the gross gain was realized from the sale of securities held for more than 5 years. The absence of frequent short-term turnover in petitioner's portfolio negatives the conclusion that these securities were sold as part of a trading operation rather than as investment activity.

Section 211 (b) of the Internal Revenue Code of 1939 [1] was intended to exempt capital gains realized by nonresident aliens from transac-

---

[1] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.

(b) UNITED STATES BUSINESS OR OFFICE.—A nonresident alien individual engaged in trade or business in the United States shall be taxable without regard to the provisions of subsection (a). As used in this section, * * * the phrase "engaged in trade or business within the United States" * * * does not include the effecting, through a resident broker, commission agent, or custodian, of transactions in the United States in commodities * * * or in stocks or securities.

tions in commodities, stocks, or securities effected through a resident broker or commission agent, unless such transactions constitute the carrying on of a trade or business [2] rather than mere incidents of a personal investment account.

Whether activities undertaken in connection with investments are sufficiently extensive to constitute a trade or business is a question to be decided on the particular facts. *Higgins* v. *Commissioner*, 312 U. S. 212. In *Fernand C. A. Adda*, 10 T. C. 273, affirmed per curiam (C. A. 4) 171 F. 2d 457, certiorari denied 336 U. S. 952, extensive transactions in commodities which do not pay dividends and could have resulted in profit only by means of the gains on the purchases and sales were found to constitute a trade or business. For similar reasons *Commissioner* v. *Nubar*, (C. A. 4) 185 F. 2d 584, reversing 13 T. C. 566, certiorari denied 341 U. S. 925, held that transactions in commodities and securities where the taxpayer was himself present in the United States throughout the period were sufficient to constitute the conduct of a trade or business.

The present situation is quite different. Petitioner never having been present in the United States, it is only through the activity of his agent that he could be held to have conducted a business. For the solution of this problem we look not solely to the year in controversy but to the entire agency and particularly to the 7 years shown by the record. These figures appearing in our findings satisfy us that the primary, if not the sole objective, was that of an investment account established to provide a reliable source of income. In fact in 4 of the 7 years the capital transactions resulted in losses rather than gains and only in the year for which respondent has determined the deficiency were the gains of any considerable consequence.

Granting that Congress "did not intend to permit a nonresident alien to establish an agent in the United States to effect transactions for his account and escape taxation of the profits" [3] where such activity is in the nature of a trade or business, we are satisfied that here the agent did no more than was required to preserve an investment account for his principal. See *Higgins* v. *Commissioner, supra; Kane* v. *Commissioner*, (C. A. 2) 100 F. 2d 382. Cf. *Commissioner* v. *Nubar, supra.* We have found as a fact that petitioner was not engaged in a trade or business in this country during the year 1946. Consequently, respondent's determination was, in our view, erroneous.

---

[2] H. Rept. No. 2475, 74th Cong., 2d sess. (1936), p. 9 ; S. Rept. No. 2156, 74th Cong., 2d sess. (1936), p. 21.

[3] *Fernand C. A. Adda, supra,* at 277.

The applicability of the extended 5-year statute of limitations under section 275 (c) of the 1939 Code[4] to the year in controversy and the matter of an increased deficiency for that year as to which respondent has the burden are both dependent upon the disposition of the primary question.   As to these issues, therefore, respondent's action must also be disapproved.

*Decision will be entered for the petitioner.*

[4] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
    (c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.