JUDITH C. CONNELLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Connelly v. Commissioner
Docket No. 11405-80.
United States Tax Court
T.C. Memo 1982-644; 1982 Tax Ct. Memo LEXIS 102; 45 T.C.M. (CCH) 49; T.C.M. (RIA) 82644; November 8, 1982. J. Jay Bullock, for the petitioner. Randy G. Durfee, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in income tax against petitioner for the following years and in the following amounts: TAXABLE YEAR ENDED
DEFICIENCY IN
DECEMBER 31
INCOME TAX
1967
$1,939.00
1968
175.00
1969
80,042.00
1970
128,692.00
1971
19,376.00
At trial, respondent conceded that there were no deficiencies of tax for the years 1967, 1968 and 1971. The parties further stipulated *104 that there were deficiencies of income tax for the year 1969, in the amount of $74,712.00, and for the year 1970, in the amount of $103,048.00. The sole issue to be decided by the Court is whether petitioner is relieved from liability for the above deficiencies for the years 1969 and 1970 by reason of the so-called "innocent spouse" provisions of section 6013(e), [1] as affirmatively pleaded by petitioner. The evidence in the case consists of a stipulation of facts with certain joint exhibits, which are incorporated herein by this reference, together with other evidence received at trial. FINDINGS OF FACT At the time of filing her petition herein, petitioner was a resident of Ogden, Utah. Petitioner married John J. Badger in the year 1963, was divorced from him in 1974, and remarried him in 1979. For the years 1967 through 1970, petitioner and John J. Badger filed joint Federal income tax returns. Petitioner had *105 no separate income during the years 1969 and 1970, and respondent's assertion of liability against her is due solely to her having filed a joint return for those years with John J. Badger. Petitioner was born in August, 1940, and completed schooling through the 10th grade. She worked at various minor clerical jobs during the years 1957 to 1960, but was apparently not employed thereafter. She had no training in accounting or business procedures. During the years 1969 and 1970, she was aged 29 years and 30 years, respectively, and had four children, all of whom were minors in those years, residing with her and her husband. From the time of her marriage until 1966, petitioner and Mr. Badger lived in Sunset, Utah, in a house petitioner was buying. They then purchased a mobile home in Riverdale, Utah, and lived there until 1968. In the years 1969 and 1970, petitioner and her family lived in a house in Washington Terrace, Utah, which petitioner and her husband purchased in 1969 with a downpayment of about $9,000, and a remaining balance due on the purchase price of about $31,000. In 1971, the petitioner and her husband moved from this residence and purchased a home in Ogden, *106 Utah, costing $50,000. Title to the property was taken in petitioner's sole name. The downpayment for the purchase of this house was $23,000. In making such downpayment, petitioner utilized funds derived from income tax refunds for the years 1967, 1968 and 1969, in the respective amounts of $1,939, $175 and $48,497, pursuant to claims for refund for those years filed by petitioner and her husband, resulting from a claimed net operating loss carryback from 1970. In her divorce from John J. Badger in 1974, this house, located at 4503 Taylor, Ogden, Utah, was awarded to petitioner, together with its contents and certain other property. Petitioner later sold this home and used the proceeds therefrom to purchase the residence in which petitioner and John J. Badger now reside. The gross income [2] reported by petitioner and her husband (all originating with petitioner's husband) for the years 1967 through 1970 was as follows: 1967
$18,959.00
1968
12,160.00
1969
263,724.19
1970
282,590.65
During the years 1969 and 1970, the sole occupation *107 of petitioner's husband, John J. Badger, was the promotion, sale and purchase of corporate stocks. The only gross income reported in the joint returns filed for those years was from this source. In the amended joint return which was filed for the year 1969, and in the joint return filed for 1970, John J. Badger reported his profits and losses from securities transactions on Schedule C of Form 1040 as resulting from the conduct of a trade or business, which John J. Badger described as the business of buying and selling stocks. In this activity, he operated only for his own account, and did not act as a registered representative, promoter or broker/dealer. We find that John J. Badger was engaged in the trade or business of dealing in securities for his own account in the years 1969 and 1970; he was a trader or dealer, as opposed to an investor. In the amended joint return which was filed for the year 1969, gross receipts or gross sales of securities were reported in the amount of $263,724.19. The correct amount of such total sales for the year 1969, as stipulated by the parties, was $282,119.97, amounting to an omission of about 7 percent. For the year 1970, the joint income tax return *108 reported gross receipts or gross sales of securities in the amount of $282,590.65, whereas the correct amount, as stipulated by the parties, was $423,422.25, amounting to an omission of almost 50 percent. During the years 1969 and 1970 various bank accounts were maintained by petitioner and/or her husband. In both years, petitioner maintained a personal checking account at the Bank of Utah, from which the household living expenses of petitioner and Mr. Badger were paid. Petitioner and her husband maintained joint checking accounts at both the Commercial Security Bank and the Clearfield State Bank, from which both business and personal expenditures were made. During the year 1969, Mr. Badger maintained a separate checking account at Zion's First National Bank, and in 1970 he maintained a separate checking account at Walker Bank and Trust Company, under the name "J & J Investment". From these two accounts both business and personal expenditures were made. In the year 1970, Mr. Badger made expenditures, inter alia, for personal items in significant amounts which were above and beyond normal living expenses and which were either for petitioner's personal benefit or were for the *109 joint benefit of petitioner and Mr. Badger, as follows: ITEM
COST
4503 Taylor,
[3] $23,000.00
Odgen, Utah
Horse - Cost and
Not shown
Maintenance
Jaguar Automobile
$ 7,100.00
2 Diamonds
17,000.00
Diamond Ring
15,000.00
2 Trips to Hawaii
8,000.00
Trip to Europe
2,756.50
Snow Mobile
Not shown
Diamond
6,000.00
$78,856.50
OPINION Although the liability of spouses who execute a joint income tax return is both joint and several as to the full amount of the tax, regardless of the spouse originating the income, section 6013(d)(3), Congress has provided some relief, in section 6013(e), [4] for spouses who were unaware of substantial understatements of gross income in the return, who did not benefit from such understatements, and where such understatements were in excess of 25% of the gross income disclosed in the return. This relief provision with respect to so-called "innocent spouses," however, is narrowly limited. All three of the conditions imposed by section 6013(e) must be satisfied by the innocent spouse, *110 and the failure to meet any one of said three conditions for a particular year will disqualify the spouse claiming relief. Estate of Jackson v. Commissioner,72 T.C. 356 (1979); Quinn v. Commissioner,524 F.2d 617 (7th Cir. 1975); Galliher v. Commissioner,62 T.C. 760 (1974), affd. 512 F.2d 1404 (5th Cir. 1975). Petitioner's invocation of the protection of section 6013(e), properly raised by her petition herein, is an affirmative defense, and petitioner bears the burden of proof to establish all the necessary elements mandated by the statute. Rules 39, 142(a); Welch v. Helvering,290 U.S. 111 (1933). *111 Turning first to the year 1969, we address the controversy between the parties as to whether petitioner has fulfilled the first condition of section 6013(e), viz., that on the joint return for 1969 "there was omitted from gross income an amount properly includable therein * * * which is in excess of 25 percent of the amount of gross income stated in the return," section 6013(e)(1)(A). Petitioner argues that her husband was not engaged in a trade or business in 1969 in his activities of buying and selling securities, but rather was acting only as an investor. Petitioner accordingly argues that, in the case of an investor, the correct way to measure the understatement of gross income is to compare the net gain from Mr. Badger's sales of securities in 1969, as reported on the return, which the parties have stipulated was $159,233.65, with the actual net gain from sales of securities in that year, which the parties have further stipulated was $246,413.65. Since the difference between these two figures is obviously more than 25 percent of the gain as reported, petitioner argues that the over-25 percent-omission test of the statute is met. Respondent, on the other hand, contends that *112 Mr. Badger was engaged in the trade or business of dealing in securities as a trader in 1969, and accordingly the omission of gross income from the return is to be measured by comparing the gross sales figure as reported with the true gross sales figure for that year. As shown in our findings of fact, such a comparison would produce an understatement of considerably less than 25 percent. Whether or not a person is engaged in a trade or business of being a trader in securities, or whether he is acting merely as an investor, is a question of fact which requires an analysis of all the surrounding facts and circumstances. Higgins v. Commissioner,312 U.S. 212 (1941); Main Line Distributors, Inc. v. Commissioner,321 F.2d 562 (6th Cir. 1963). This Court has described the distinction between investing and trading as follows: [I]n the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of securities on the daily market. In a trading account, securities *113 are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis. [Chiang Hsiao Liang v. Commissioner,23 T.C. 1040, 1043 (1955)]
In approving the characterization by this Court of the taxpayer's activities as constituting trading as opposed to investing, the Court of Appeals for the Ninth Circuit said: It [the Tax Court] properly examined the frequency, extent and regularity of petitioner's securities transactions as well as his intent to derive profit from relatively short-term turnovers. [Purvis v. Commissioner,530 F.2d 1332, 1334 (9th Cir. 1976)]
The record herein satisfies us, and we have accordingly found, that in 1969 petitioner's husband was engaged in the trade or business of being a trader or dealer in securities, as opposed to being a mere investor. In the original joint return which was filed for 1969, Mr. Badger showed his numerous dealings in securities as short-term capital gains and losses under Schedule D. In the amended joint return filed for 1969, however, Mr. Badger filed a Schedule C Listing his trade or business as dealing *114 in stock purchases and sales and reflected his securities transactions as income from a trade or business. He did the same thing for 1970. [5] The original 1969 return is illuminating, since it shows that all the securities transactions completed in that year were short-term capital gains or losses, meaning that the securities were held for not more than six months, section 1222(1). It is also significant that no divided income was reported from any of these securities, indicating pretty clearly that the purpose of acquiring such securities was not for their income element but for the purposes of making a profit on resale. Compare Adda v. Commissioner,10 T.C. 273 (1948), affd. 171 F.2d 457 (4th Cir. 1949), cert. denied 336 U.S. 952 (1949). Although petitioner's husband testified at trial that he was not a "trader", we do not find this self-serving *115 testimony convincing. All the rest of Mr. Badger's testimony, together with the facts in the record, are consistent with Mr. Badger engaging in trade or business as a trader or dealer for his own account. Mr. Badger's testimony was that most of his purchases and sales of securities were made through brokers or dealers, which is consistent with being a trader, but he did make some sales of exchanges of securities directly with the customer, which is consistent with being a dealer. Although the difference may be important in some cases, and we have made a clear distinction between the two, see Kemon v. Commissioner,16 T.C. 1026 (1951); Bradford v. Commissioner,22 T.C. 1057 (1954), it is not material here. The issue here is whether Mr. Badger was not engaged in a trade or business, but was a mere investor, or whether he was engaged in the trade or business of buying and selling securities for his own account. Since it is clear that a person may be engaged in a trade or business through his activities as a trader, or as a dealer, or even as both, Levin v. United States,220 Ct. Cl. 197, 597 F.2d 760 (1979); Purvis v. Commissioner,supra; *116 Commissioner v. Nubar,185 F.2d 584 (4th Cir. 1950); Farr v. Commissioner,44 B.T.A. 683 (1941); see section 1.471-5, Income Tax Regs., our finding that Mr. Badger was engaged in the trade or business of buying and selling for his own account is sufficient for the purposes of this case.
Having so found, it follows that the omission of income is to be measured by a comparison of the gross receipts or sales figure disclosed in the 1969 return with the true figure.Sections 6013(e)(2)(B), 6501(e)(1)(A). [6] Such omission being less than 25 percent, as we have found, petitioner has failed to meet the test of section 6013(e)(1)(A), and accordingly is not entitled to relief for the year 1969. Resnick v. Commissioner,63 T.C. 524 (1975). [7]
*117 For the year 1970, however, the situation is different. Respondent has conceded, and the facts which we have found clearly show that petitioner has met the over-25 percent-underreporting requirement of section 6013(e)(1)(A). We must accordingly look to see whether the other tests of the statute have been met. In 1970, it was apparent that petitioner had come a long way from living in a mobile home in 1968. In 1970 alone, petitioner acquired, inter alia, a Jaguar automobile, a diamond ring, three other diamonds, took two trips to Hawaii and a trip to Europe, at costs as detailed in our findings. In the following year, she made a $23,000 downpayment on a new home titled in her sole name, using funds from a claimed 1970 loss. There is no indication in this record that petitioner had any separate resources from which these significant luxury items could have come. Although the record shows in some detail the various bank accounts maintained by petitioner and/or her husband fromwhich these items were purchased, no attempt was made to identify the account or accounts intowhich the substantial unreported income for 1970 was funneled, and on this record we are *118 unable to hold that petitioner's excursion into the more abundant life in 1970 was not financed, at least in part, from the large unreported income of petitioner's husband for that year, even after disregarding any reasonable amounts which might have been expended for petitioner's normal support. Section 6013(e)(1)(C); section 1.6013-5(b), Income Tax Regs. We must accordingly hold that petitioner has failed to meet her necessary burden of proof with respect to the requirements of section 6013(e)(1)(C), and we do not find any other facts and circumstances present in this case which would make it "inequitable to hold [petitioner] liable for the deficiency in tax for such taxable year attributable to such omission." [8]
*119 We accordingly hold that petitioner has failed to meet the statutory requirements of section 6013(e) for either 1969 or 1970. In view of the disposition of other issues in the case by agreement of the parties, Decision will be entered under Rule 155.
Footnotes
1. All references to sections herein are to sections of the Internal Revenue Code of 1954, as in effect in the years in issue, unless otherwise noted. All references to Rules herein are to the Rules of Practice and Procedure of the United States Tax Court.↩
2. Including gross receipts or gross sales of proprietary businesses reported on Schedules C of the respective returns.↩
3. Purchased in 1971 using 1970 funds.↩
4. Section 6013(e) reads as follows: (e) Spouse Relieved Of Liability In Certain Cases.-- (1) In general. Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is equitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special Rules.--For purposes of paragraph (1)-- (A) the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws, and (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e)(1)(A)↩.
5. The net operating loss which petitioner and Mr. Badger claimed for 1970 was based upon his securities transactions for that year and was necessarily based upon the proposition that such loss was incurred in a trade or business and not in a mere investment activity. Section 172(d)(2).↩
6. The pertinent portion of section 6501(e)(1)(A) is as follows: (i) in the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; * * *. ↩
7. Our utilization of the gross receipts test on the basis of our conclusion that Mr. Badger was engaged in a trade or business and was not simply an investor is not intended to imply that if he had fallen into the latter category, the gross receipts test would necessarily not be applied in view of the broad sweep of section 6501(e)(1)(A), see Estate of Klein v. Commissioner,63 T.C. 585 (1975), affd. 537 F.2d 701 (2nd Cir. 1976); Roschuni v. Commissioner,44 T.C. 80↩ (1965).
8. We note that petitioner and Mr. Badger, whom petitioner remarried in 1979, were, at the time of trial, living in a house purchased with the proceeds of a house which petitioner purchased in 1971, using as a substantial downpayment money derived from a refund of their income taxes for 1967, 1968 and 1969, which refund was generated by an erroneous net operating loss carryback claim for the year 1970, resulting from the underreporting of income for the year.↩