*Decisions will be entered under Rule 50.*

LAURA V. LILLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1284–63.   Filed November 26, 1965.

*W. Carroll Parks*, for the petitioner.
*George K. Dunham*, for the respondent.

OPINION

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1959, 1960, and 1961, in the amounts of $46.15, $59.04, and $64.45, respectively.

Petitioner assigned errors as follows:

(a) The Commissioner erred in increasing Petitioner's taxable income in the calendar years at issue by adding thereto the compensation received from the Baltimore City Police Department because the same is not subject to tax because it is life insurance and is tax exempt under Section 101(a) of the 1954 Code.

(b) The Commissioner erred in classifying the compensation received by the Petitioner from the Baltimore City Police Department as an annuity, when the same is in fact life insurance.

All of the facts have been stipulated and are found accordingly.

Petitioner, a resident of Baltimore, Md., filed individual income tax returns for the years in question with the district director of internal revenue at Baltimore.

For many years petitioner's husband, Clarence Lilly, was a member of the Baltimore City Police Department, hereinafter referred to as the department.

While a member of the department, petitioner's husband contributed to and was covered by a so-called special fund set up by the Charter and Public Laws of Baltimore City. Under the law in effect at the time of his retirement, an employee of the department who was covered by the special fund could be retired upon a finding of the police physicians that he was physically incapable of performing active police duty. If he was retired for physical incapacity and was appointed to the department prior to June 1, 1943, and had 16 years of service, or if appointed after June 1, 1943, and had 20 years of service, he received from the special fund an amount equaling one-half of the basic pay of the grade in which he was retired. If the physical incapacity was the result of an injury sustained in the line of duty, then he was retired on one-half of his basic pay for the grade in which he retired without reference to the number of years of service. In addition to the aforementioned provisions for retirement due to physical incapacity, employees could voluntarily retire at age 60 if they had 30 years of service and there was a provision for mandatory retirement at age 70. These provisions are incorporated in section 591 of the Charter and Public Laws of Baltimore City.

All of the above-described benefits were paid out of the special fund, which was made up of contributions of covered employees made while they are on active duty in the amount of 2 percent of their salaries; fines imposed upon policemen; rewards paid the department; and contributions from the City of Baltimore in an amount necessary to make up the deficit between the moneys available in the fund and the pension and retirement benefits paid by the special fund.

The amounts paid under the above-described provisions were paid only to the employee himself and ceased upon his death. There was no survivorship provision whereby an employee's wife would receive the amount, or a portion thereof, if the employee-husband should

predecease her, except in the case of an employee who was killed in the line of duty or died from injuries sustained in the line of duty. In this event, the widow of the employee received until she remarried the amount to which the employee would have been entitled. If there was no widow but there were children, then the child or children would receive, until they reached the age of 18, the amount to which the employee would have been entitled. This provision is contained in section 586 of the Charter and Public Laws of Baltimore City.

In addition to the above-described special fund and related benefits, the department maintained a "Special Fund for Widows," hereinafter referred to as the widows' fund. The widow of an employee received, whether he died while on active duty or after retirement, an amount equaling one-quarter of the employee's basic pay at the time of his death or retirement. This sum was paid during the life of the widow or until she remarried. Upon the death of the widow or her remarriage, the sum was paid to the child or children of the deceased employee until they reached the age of 18.

In order to be covered by the widows' fund, an employee had to be covered by the previously mentioned special fund and had to elect coverage. After electing coverage, an additional sum equal to 2 percent of the employee's basic pay was withheld from his salary and paid into the widows' fund. In order for the widow to qualify, she had to be married to the covered employee prior to his retirement and for at least 5 years before his death. If, after receiving the widow's pension, the widow herself was appointed to the department, the widows' fund payments were suspended. If she became covered by any pension plan by virtue of her position as an employee of the department, then the widows' fund payments would not be reinstated. If the widow's spouse left the department prior to his death or retirement, all claims to benefits were forfeited. The provisions governing the widows' fund are contained in sections 587 and 588 of the Charter and Public Laws of Baltimore City.

Petitioner's husband was retired from the department on or about June 7, 1948, and was paid under the provisions of the special fund. During the period of his active duty, petitioner's husband elected to be covered by the widows' fund provisions. He died in 1955 at which time the petitioner began receiving payments from the widows' fund. At the time petitioner began receiving these payments she was 54 years old and had a life expectancy of 26.3 years.

During his years of active duty with the department, petitioner's husband made total contributions to the widows' fund in the amount of $430.56.

During each of the years 1959, 1960, and 1961, petitioner received an amount of $1,024.92 from the widows' fund. Petitioner did not report any amount received from the widows' fund as income in any of her returns for the years in question. All the returns were prepared by her attorney W. Carroll Parks. Written across the face of the original returns was the statement: "Balto Police Dept. tax exempt under section 22(b)(5) of the 1939 Code and section 105(e) of the 1954 Code." [1] Parks filed an amended return for petitioner for 1961 and written across the face of this amended return was the statement: "Balto. Police Dept., tax exempt under Sect. 101 (a) of the 1954 Code."

In separate notices of deficiency for each of the years involved, the respondent treated the amounts received from the widows' fund as taxable annuities and, after determining the investment in the contract and applying the exclusion ratio, included the taxable portion in her income for the years in question. In determining the amount of investment in the contract, respondent included the contributions of petitioner's husband while on active duty, plus $5,000, the amount of the allowable employee death benefit exclusion provided under section 101(b)(2)(A) of the Internal Revenue Code of 1954. [2]

In addition to the contributions by members on active duty, the widows' fund is made up of contributions by the City of Baltimore in an amount sufficient to make up the difference between the amount of benefits paid out by the fund and the contributions of active duty personnel. For the years in question the City of Baltimore made the following contributions to the widows' fund:

| | |
|---|---|
| 1959 | $341,600 |
| 1960 | 377,133 |
| 1961 | 416,588 |

---

[1] Petitioner no longer claims exemption under these sections of the 1939 and 1954 Codes, respectively. Petitioner now claims the $1,024.92 received each year is excluded from gross income under sec. 101(a)(1) of the 1954 Code.

[2] In a statement attached to the notice of deficiency for 1959 it was stated: "The above deficiencies are based on adjustments and explanations as disclosed in the report of examination, a copy of which was forwarded to you under date of November 14, 1962." In the report dated Nov. 14, 1962, the respondent increased petitioner's income for 1959 by the amount of $818.30, which he explained, as follows:

Taxpayer failed to include in income pension received from Baltimore Police Department.

Pension received in 1959—$1,024.92.

Computation of taxable portion of pension:

Taxpayer was 54 years of age and had a life expectancy of 26.3 years.

Expected return $26.3 \times 1024.00 = 26,931.20$.

Investment in contract $5,000.00 + 430.56 = 5,430.56$.

Percentage of exclusion $5,430.00 \div 26,931.20 = .2016$.

Exclusion $1,024.92 \times .2016 = 206.62$.

Taxpayers pension subject to tax $1,024.92 - 206.62 = 818.30$.

Substantially the same explanations were made for the years 1960 and 1961.

The only issue involved in this proceeding is the nature, for tax purposes, of amounts received by petitioner from the widows' fund maintained by the Baltimore City Police Department.

Petitioner contends that the entire amount of $1,024.92 received during each of the taxable years in question is excludable from gross income under section 101(a)(1) of the 1954 Code.[3]

The respondent contends that the amount of $1,024.92 received by petitioner during each of the taxable years in question is an annuity includable in petitioner's gross income to the extent provided in sections 72[4] and 101(b),[5] I.R.C. 1954. As far as the effective date[6] of

---

[3] SEC. 101. CERTAIN DEATH BENEFITS.

    (a) PROCEEDS OF LIFE INSURANCE CONTRACTS PAYABLE BY REASON OF DEATH.—

        (1) GENERAL RULE.—Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.

    [Note: The exceptions "provided in paragraph (2) and in subsection (d)" are not applicable to the facts of this case.]

[4] SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

    (a) GENERAL RULE FOR ANNUITIES.—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

    (b) EXCLUSION RATIO.—Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date). This subsection shall not apply to any amount to which subsection (d)(1) (relating to certain employee annuities) applies.

    [Note: Subsec. (d) (1) and (2) does not apply for the reason that the "investment in the contract" of $5,430.56 is not "recoverable in 3 years."]

[5] SEC. 101. CERTAIN DEATH BENEFITS.

    (b) EMPLOYEES' DEATH BENEFITS.—

        (1) GENERAL RULE.—Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.

        (2) SPECIAL RULES FOR PARAGRAPH (1).—

           (A) $5,000 LIMITATION.—The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000.

        *     *     *     *     *     *     *

        (D) OTHER ANNUITIES.—In the case of any amount to which section 72 (relating to annuities, etc.) applies, the amount which is excludable under paragraph (1) (as modified by the preceding subparagraphs of this paragraph) shall be determined by reference to the value of such amount as of the day on which the employee died. *Any amount so excludable under paragraph (1) shall, for purposes of section 72, be treated as additional consideration paid by the employee.* [Emphasis supplied.]

[6] SEC. 101. CERTAIN DEATH BENEFITS.

    (f) EFFECTIVE DATE OF SECTION.—This section shall apply only to amounts received by reason of the death of an insured or an employee occurring after the date of enactment of this title. Section 22(b)(1) of the Internal Revenue Code of 1939 shall apply to amounts received by reason of the death of an insured or an employee occurring on or before such date.

section 101, I.R.C. 1954, is concerned, it may be noted that petitioner's husband died in 1955 which was after the enactment of the 1954 Code.

We agree entirely with the respondent's contention. We think the special fund and the widows' fund must be considered together as a part of an integrated plan to provide retirement benefits to employees, their spouses, and their children. The special fund provided retirement benefits to employees only, with the exception of those employees who died from injuries sustained in the line of duty. For those employees who were retired for physical disability not connected with line-of-duty injuries, voluntary retirees, or mandatory retirees, there was no provision for survivorship benefits if they should predecease their wives or children. Presumably the widows' fund was set up to remedy this situation. Thus, if an employee who was covered by the special fund desired to provide a steady source of income for his spouse and children should he predecease them while on active duty or after retirement, he could elect to be covered by the widows' fund and paid for the additional coverage by paying an additional two percent of his salary into the fund. In effect, the widows' fund provided a survivorship feature for the special fund, and an election to be covered by the widows' fund was similar to the option in many annuities to have the benefits paid to a survivor.

The situation here is very similar to the situation in *Anna E. Curtis*, 8 T.C. 266. The taxpayer in that case was the widow of a retired fireman of the District of Columbia. The decedent in that case during his active years had paid 3½ percent of his salary into the Policemen and Firemen's Relief Fund for the District. During each of the taxable years 1942 and 1943 the taxpayer received $720 from the fund. In holding that the amount so received constituted taxable income to the taxpayer, we said:

She did in fact receive monthly payments from the fund, *and the situation is sufficiently akin to an annuity contract* and the treatment of retired employees under the Civil Service Retirement Act to justify a similar treatment. * * * [Emphasis supplied.]

To the same effect where the taxpayer was a retired employee of the Civil Service Retirement Act, see *Edward C. Heard*, 40 T.C. 7, affd. 326 F. 2d 962 (C.A. 8, 1964), certiorari denied 377 U.S. 378.

For reasons which will later appear, we need not take too seriously petitioner's contention that the entire amount of $1,024.92 received during each of the taxable years in question is excludable from gross income under section 101(a)(1), *supra*. Section 101 is titled "CERTAIN DEATH BENEFITS." These death benefits are principally of

two classes: (a) "Proceeds of Life Insurance Contracts Payable by Reason of Death" mentioned in section 101 (a), and (b) "Employees' Death Benefits" mentioned in section 101 (b).

We think the payments come within the classification (b) in section 101, *supra*. We do not think there can be any question but that the City of Baltimore was petitioner's husband's employer, cf. *William E. Conroy*, 41 T.C. 685, affd. 341 F. 2d 290 (C.A. 4, 1965), and that the amounts paid to petitioner by the city were paid to her by virtue of her husband's death, thus bringing the instant case squarely within the general rule stated in section 101 (b) (1), *supra*. Subparagraph (A) of this section limits the amount of the exclusion to $5,000 and provides in subparagraph (D) that "Any amount so excludable under paragraph (1) shall, for purposes of section 72, be treated as additional consideration paid by the employee." This is exactly what the respondent has done. In determining the exclusion ratio under section 72 (b), the respondent, in determining the "investment in the contract," has added the $5,000 excludable under section 101 (b) (2)-(A) to the $430.56 contributed to the widows' fund by petitioner's husband.

It should be noted that the forerunner of section 101 (b), *supra*, was section 22 (b) (1) (B) of the 1939 Code which was added to the 1939 Code by section 302 [7] of the Revenue Act of 1951. This addition was explained in S. Rept. No. 781, 82d Cong., 1st Sess., p. 50 (1951), as follows:

> Section 22 (b) (1) of the code excludes from gross income amounts received under a life-insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise. However, by its terms, this provision is limited to life-insurance payments, and the exclusion does not extend to death benefits paid by an employer by reason of the death of an employee. In order to correct this hardship, section 302 of your committee's bill excludes from gross income death benefits not in excess of $5,000 paid by any one employer with respect to any single employee's beneficiary or beneficiaries in accordance with a pre-existing contract. The limitation of the exclusion to payments not in excess of $5,000 will prevent abuses under this new provision.

---

[7] SEC. 302. PAYMENTS TO BENEFICIARIES OF DECEASED EMPLOYEES.

(a) AMENDMENT OF SECTION 22 (b) (1).—Section 22 (b) (1) (relating to exclusion of life insurance proceeds from gross income) is hereby amended to read as follows:

"(1) LIFE INSURANCE, ETC.—Amounts received—

"(A) under a life insurance contract, paid by reason of the death of the insured; or

"(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee;

whether in a single sum or otherwise * * *. The aggregate of the amounts excludible under subparagraph (B) by all the benficiaries of the employee under all such contracts of any one employer may not exceed $5,000."

We considered and applied section 22(b)(1) of the 1939 Code in *Marian Essenfeld*, 37 T.C. 117, affd. 311 F. 2d 208 (C.A. 2, 1962), where the sole contention of the taxpayer (a widow) was, as it is here, that the payments in controversy should be excluded from her income as being "life insurance." In holding that subparagraph (B) of section 22(b)(1) was a specific statutory enactment which took precedence over subparagraph (A) which was more general, we said:

Even if an employer's promise to make payments upon the death of an employee can be called "life insurance," * * * it is a kind of life insurance which is separately described and singled out for special treatment.[2] And a specific statutory enactment takes precedence over one more general even if the latter might otherwise appear to govern.

<div align="center">

\*    \*    \*    \*    \*    \*    \*

</div>

That the distinction so created was not accidental appears from the legislative history. Prior to 1951 there was no express provision dealing with the kind of payment involved here. In that year section 22(b)(1)(B) was added to the 1939 Code. Its purpose was to make clear that the kind of payment here in issue would be assimilated to life insurance, but only to a limited extent, and not beyond the relief respondent has already accorded to petitioner.

[Footnote omitted.]

While section 101 is applicable in the instant case by reason of subsection (f), *supra*, petitioner's husband having died after the enactment of the 1954 Code, we think the same reasoning should apply here as was applied under section 22(b)(1) of the 1939 Code for the two sections are substantially the same.

We sustain the respondent's determination.

<div align="right">

*Decision will be entered for the respondent.*