Florence Y. BARNES,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 85–1881.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1986.

Decided Sept. 22, 1986.

John F. Murray, Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellant.

Ralph J. Swanson, Sebat Swanson Banks Lessen & Garman, Danville, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and CUDAHY, Circuit Judges.

CUMMINGS, Chief Judge.

The issue in this case is whether certain benefits received by the plaintiff were paid pursuant to a life insurance contract and are thus excluded from income under 26 U.S.C. § 101(a)(1). Because we determine that there was no life insurance contract, we reverse the district court's judgment for plaintiff, 611 F.Supp. 413.

Plaintiff, Florence Barnes, is the widow of an employee of the University of Illinois (Urbana-Champaign campus) who died on

August 23, 1970. At the date of his death, plaintiff's husband was subject to the provisions of the State Universities Retirement System, set forth in Ill.Rev.Stat. ch. 108½, art. 15 (1969). The Retirement System provides both retirement and disability benefits to employees and their families. The Survivors Insurance Benefit was added to the Retirement System in 1959. 1959 Ill. Laws 1009 (codified at Ill.Rev.Stat. ch. 108½, §§ 15–145 to 148). Both the retirement and insurance plans are financed by a combination of employee and employer contributions.

After her husband died, plaintiff began receiving $3,000 per year (in monthly installments of $250) in survivors insurance benefits. Plaintiff excluded this amount from her taxable income pursuant to 26 U.S.C. § 101(a)(1) and (d). Upon audit the Internal Revenue Service (IRS) assessed deficiencies for the years 1978 and 1979, asserting that the payments constituted a "pension/annuity" taxable under 26 U.S.C. § 61. The plaintiff was assessed for tax deficiencies in those years for $716 and $743, respectively. She paid the deficiencies, filed claims for refund, and upon disallowance of her claims brought this suit for refund.

The district court granted Barnes' motion for summary judgment. Defendant appeals. We must decide whether the plaintiff's insurance program constitutes a life insurance contract for purposes of 26 U.S.C. § 101(a)(1), which allows an unlimited exemption from gross income for life insurance proceeds, if paid by reason of the insured's death.[1]

## DISCUSSION

The traditional definition of a life insurance contract is an agreement to pay a certain sum of money upon the death of the insured in consideration of the payment of premiums. *Central Bank of Washington v. Hume*, 128 U.S. 195, 205, 9 S.Ct. 41, 44, 32 L.Ed. 370 (1888). Fundamental charac-

teristics of life insurance are risk shifting and risk distribution. *Helvering v. Le Gierse*, 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941); *Ross v. Odom*, 401 F.2d 464 (5th Cir.1968). Risk shifting is transferring the risk of loss caused by premature death from the insured and his or her beneficiaries to the insurer. Risk distribution is spreading the risk of this economic loss among the participants in the insurance program. Thus a life insurance contract pays out of a common fund upon an individual's death regardless of whether the amount is more or less than the decedent paid into the fund. *Ross v. Odom*, 401 F.2d 464, 467 (5th Cir.1968). Although there are variations on this theme, the common life insurance contract pays the insured's estate or beneficiaries a definite sum of money upon the death of the insured from a particular peril or from any peril. See Couch on Insurance § 1.73 (Rev. 2d ed.).

Simply put, the insured and insurer are each betting on the longevity of the insured. The risk to the insurer is that death will come before the value for premiums paid exceeds the death benefit. The insured risks that the value of his or her payments will surpass the promised payment before death. If the contract operates to insure a risk-free system for either party, it is not a life insurance contract. *Helvering v. Le Gierse*, 312 U.S. 531, 61 S.Ct. 646; *Edgar v. Commissioner*, 39 T.C.M. (CCH) 816, 822 (1979).

Our analysis of the survivors insurance benefit program provided by the state discloses three important factors. The first critical factor is the refundability of contributions. According to the survivors insurance plan, contributions made by the insured will never be forfeited. If the employee is terminated or retires, his or her contributions are refundable. The same is true if the employee dies leaving no statutorily qualified beneficiaries. Similarly, in

---

1. 26 U.S.C. § 101(a)(1) provides:
   Except as otherwise provided ... gross income does not include amounts received

   (whether in single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.

some circumstances under the retirement and death benefit programs contributions are returned to the insured or beneficiary. For the employee-insured the premium payments into the fund are not irrevocably committed. Under this arrangement, the insured takes no risk of death since the insured is entitled to the return of at least the amount of contributions (plus interest) in any event. See *Edgar v. Commissioner*, 39 T.C.M. (CCH) 816, 822 (1979).

The second factor is the interrelationship between the retirement, disability, death benefit, and the survivors insurance programs. The amount of benefits under both the retirement plan and the death benefit programs depends in part on whether survivors insurance benefits are also payable. See, e.g., §§ 15–141, 15–142. Additionally, although payments are made separately, contributions to the programs are pooled for investment purposes. This interdependence among the types of programs supports the notion that it is in reality one integrated program of which the survivors insurance benefits provide a survivorship element for the retirement program. See *Lilly v. Commissioner*, 45 T.C. 168, 173 (1965).

The third factor to be considered is the number and type of restrictions placed on the right to receive benefits under the survivors insurance program. Benefits are payable only to a restricted class of beneficiaries: a dependent spouse, dependent children, or dependent parents. For example, a surviving spouse must be either over 55 or still caring for dependent children. Benefit payments stop if the surviving spouse remarries, if the children lose their dependency status, and may also stop if any of them dies. Furthermore, if the beneficiary is already receiving survivors insurance benefits when a second covered employee dies, he or she is entitled only to the larger of the two benefits. And, as noted earlier, if the employee dies leaving no qualified beneficiaries, his or her estate receives only the amount of past contributions and no death benefits. Whatever the characterization of this plan, it does not provide for benefit payments immediately upon the death of the insured. Cf. *Ross v. Odom*, 401 F.2d 464 (5th Cir.1968). Rather, it is obviously designed to assist certain surviving dependents only while they remain dependents. See *Edgar*, 39 T.C.M. (CCH) at 822; *Lilly*, 45 T.C. at 173; *Davis v. United States*, 323 F.Supp. 858 (S.D.W. Va.1971). Because the duty to pay arises and continues only under certain conditions, both precedent and subsequent,[2] this plan is not one of life insurance.

Plaintiff argues that although the employee carries little risk, the employer also contributes to the insurance fund and bears the substantial risk. Because the employer's contributions are irrevocably committed, the argument goes, there is adequate risk shifting in this insurance plan. There are two weaknesses in this position. First, the employer is required to fund the plan for all employees. Thus when one employee withdraws from the plan (either due to death with no qualified beneficiaries, retirement, or termination) the funds contributed on his or her behalf may then switch to fund another employee. Those contributions are not lost; they are simply redirected. This factor runs afoul of the risk transfer requirement of insurance. Second, if all the plan participants are entitled to at least the return of their contributions, then they carry none of the risk. Hence the risk is not distributed among them. Instead, it is only the employer who carries the risk. This is not adequate risk distribution for insurance.

Looking through the form of the "Survivors Insurance Benefit Plan" we see little substance. The payment of benefits is conditioned on too many "ifs" for real risk

---

**2.** Plaintiff argues that the life insurance benefit payments may be conditioned on the survival of certain beneficiaries, citing *Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir.1977). This case is distinguishable because the payments here can cease due to conditions subsequent to the death of the insured. Additionally, in *Connelly* no premium refunds were made.

shifting and risk distribution to take place. And when benefits are not payable, the insured or his or her estate still recovers the insured's contributions plus 4½% interest, just as if the insured had put the premiums into savings.[3] There is no risk to the insured. This plan more closely resembles a survivor's pension plan that provides special benefits for those dependent members of an employee's family who may be particularly affected by the employee's death.

Because the contributions are refundable, the obligation to make payments to beneficiaries is limited by the beneficiaries' status (both before and after the insured's death), and the plan is interdependent with the rest of the pension plans, the Survivors Insurance Benefit program is not insurance for purposes of 26 U.S.C. § 101(a)(1). Rather the program is typical of retirement annuities. Therefore, there is no need to discuss the Commissioner's fall-back argument that the tax treatment is governed by 26 U.S.C. § 101(b)(1).[4] The judgment of the district court is therefore reversed.

---

**3.** Plaintiff also argued that participants in the insurance program were at risk for the opportunity cost of their premium payments. In other words, although they would receive their contributions back, they would only receive 4½% interest whereas they could have obtained a much greater interest rate through other investments. However, all we are concerned with is whether the insured would have been in the same position simply saving the money. See *Commissioner v. Treganowan,* 183 F.2d 288, 291 (2d Cir.1950), certiorari denied sub nom. *Strauss' Estate v. Commissioner,* 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625. Hence the 4½% interest rate adequately reflects one possible type of savings—a passbook savings account.

**4.** 26 U.S.C. § 101(b) provides in pertinent part:

(1) General rule.—Gross income does not include amounts received ... by the beneficiaries or the estate of an employee, if such amounts are paid ... by reason of the death of the employee.

. (2) Special Rules for paragraph (1).—

(A) $5,000 limitation.—The aggregate amounts excludable under paragraph (1) ... shall not exceed $5,000.