RALPH E. PURVIS and PATRICIA LEE PURVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Purvis v. Commissioner
Docket No. 6341-72.
United States Tax Court
T.C. Memo 1974-164; 1974 Tax Ct. Memo LEXIS 156; 33 T.C.M. (CCH) 702; T.C.M. (RIA) 74164; June 24, 1974, Filed. Ralph E. Purvis, pro se. Robert J. Chicoine, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent *157 determined deficiencies in petitioners' income taxes for the calendar years 1967 and 1968 in the amounts of $3,198.89 and $17,723.97, respectively. Some of the issues raised by the pleadings in this case have been disposed of by agreement of the parties, leaving for our decision the following: Whether petitioner was engaged in the trade or business of a trader in stock during the years 1963 through 1968 so as to be entitled to deduct interest payments to brokerage firms with which he maintained margin accounts as business expenses under section 172(c), I.R.C. 1954, [1] for the years 1963 through 1966, and expenses in connection with lobbying activities respecting an interest equalization tax on foreign stock during the years 1967 and 1968 under the provisions of section 162(e). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Silverdale, Washington, at the date of the filing of their petition in this case, filed joint Federal income tax returns for each of the years 1967 and 1968 with the district director *158 of internal revenue at Seattle, Washington. Ralph E. Purvis, hereinafter referred to as petitioner, has been a member of the Bar of the State of Washington since 1934. With the exception of approximately 4 years while serving as a naval officer during World War II, he was engaged in the full-time practice of law from 1936 to 1962. In 1962 petitioner terminated his full-time practice of law but continued to practice law on an occasional basis through 1968. While still actively engaged in the full-time practice of law, petitioner became interested in acquiring Canadian mining securities as an investment. Commencing in 1956, petitioner purchased a substantial number of shares of Highland Bell, Ltd., a Canadian silver mining company. By December 21, 1960, petitioner had acquired 102,100 of the approximately 1,500,000 outstanding shares of Highland Bell, Ltd., and on that date was elected as a member of the board of directors of that corporation. Petitioner served as a director of Highland Bell, Ltd., until September 1969 and received an annual director's fee of $277.50 for this service. The stock of Highland Bell, Ltd., was listed on the Vancouver, British Columbia and Toronto, *159 Ontario stock exchanges during the period of petitioner's ownership of this stock. By 1963 the shares of Highland Bell, Ltd., which petitioner owned had substantially increased in value over the price petitioner had paid for the shares, enabling petitioner to borrow money from his broker using these shares as collateral. During 1963 and a portion of 1964 petitioner maintained a margin account, No. 50028, with the securities brokerage firm of James Richardson & Sons, Vancouver, British Columbia. During a portion of 1964 and during the years 1965, 1966, 1967, and 1968, petitioner maintained a margin account, No. 601 11076, with the Vancouver, British Columbia office of the securities brokerage firm of Merrill Lynch, Pierce, Fenner & Smith, Inc. Only stock in Canadian corporations was purchased and sold by petitioner through this account. During the months of January through July 1965, petitioner maintained a second account, No. 602 10134 with Merrill Lynch, Pierce, Fenner & Smith, Inc., which was used to purchase and sell stock in a United States corporation, Oxford Paper Company. As of the end of the months January through May 1965, this account showed that petitioner owned *160 2,000 shares of Oxford Paper Company, which shares were sold by petitioner on June 10, 1965. Petitioner continued to maintain this account and in 1967 and 1968 purchased and sold stocks in United States States corporations through this account. This account showed that the brokerage firm held no stock in this account for petitioner in the first 2 months of 1967, but at the end of March and April 1967, 500 shares of Avnet, Inc., were held in this account for petitioner. The following schedule shows the stocks held in account No. 602 10134 for petitioner at the end of each month from May 1967 through December 1968: 1967 End of month
Name of stock
No. of shares May
Mack Truck Inc. PV5
100
Murphy Oil Corp
1,000
Stanrock Uran Mines
15,000
June
APL Corp
500
Amphenol Corp
400
Murphy Oil Corp.
600
Stanrock Uran Mines
15,000
July
Pacific Petroleums
3,000
Stanrock Uran Mines
15,000
August
Allis Chalmers PV10
1,000
Pacific Petroleums
2,000
September
Allis Chalmers PV10
3,000
Copper Range Co.
500
October
Allis Chalmers PV10
3,000
Copper Range Co.
500
November
Allis Chalmers PV10
3,000
Copper Range Co.
500
December
Copper Range Co.
500
Home Oil Co. Ltd. A
2,000
1968
January
Copper Range Co.
1,000
Home Oil Co. Ltd. A
2,000
February
Copper Range Co.
1,000
Home Oil Co. Ltd. A
2,000
March
Copper Range Co.
500
Home Oil Co. Ltd. A
2,000
April
Copper Range Co.
500
Home Oil Co. Ltd. A
1,000
May
Copper Range Co.
500
June
Copper Range Co.
500
July
Copper Range Co.
500
August
Copper Range Co.
500
September
Copper Range Co.
500
October
Copper Range Co.
3,500
November
Copper Range Co.
4,500
Signal Companies, Inc.
2,000
December
None
*161 The following schedule shows petitioner's securities position in his account with James Richardson & Sons and his Vancouver Canadian account with Merrill Lynch, Pierce, Fenner & Smith, Inc., as of the end of each of the months from January 31, 1963, through December 31, 1968: End of month
Name of stock
No. of shares 1963 January
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Giant Mascot Mines
16,000
Granduc Mines
1,000
Highland Bell
101,500
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
February
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Giant Mascot Mines
3,500
Granduc Mines
2,000
Highland Bell
102,600
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
March
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
4,700
Hercon Petroleums
20,000
Highland Bell
103,400
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
April
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
10,000
Hercon Petroleums
20,000
Highland Bell
105,000
Mattagami Lake Mines
2,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
May
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
10,000
Hercon Petroleums
20,000
Highland Bell
108,000
Mattagami Lake Mines
2,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
June
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
10,000
Hercon Petroleums
20,000
Highland Bell
108,000
Mattagami Lake Mines
2,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
July
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
18,000
Hercon Petroleums
20,000
Highland Bell
108,000
Mattagami Lake Mines
2,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
4,000
August
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
15,000
Granduc Mines
18,000
Hercon Petroleums
20,000
Highland Bell
108,000
Mattagami Lake Mines
2,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
3,500
September
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
20,000
Granduc Mines
18,000
Hercon Petroleums
20,000
Highland Bell
115,000
Mattagami Lake Mines
5,000
North Goldcrest Mns
10,000
Pax International
5,000
Sheep Creek Mines
3,500
October
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
25,000
Granduc Mines
18,000
Hercon Petroleums
20,000
Highland Bell
115,000
Mattagami Lake Mines
5,000
North Goldcrest Mines
10,000
Pax International
5,000
Sheep Creek Mines
3,500
November
Area Mines
10,000
Copper Ridge Mines
50,000
Endako Mines
25,000
Granduc Mines
11,500
Hercon Petroleums
20,000
Highland Bell
115,000
Mattagami Lake Mines
5,000
Sheep Creek Mines
3,500
December
Copper Ridge Mines
50,000
Endako Mines
22,600
Granduc Mines
9,100
Hercon Petroleums
20,000
Highland Bell
115,800
Mattagami Lake Mines
5,000
Sheep Creek Mines
3,500
1964
January
Copper Ridge Mines
40,000
Endako Mines
26,000
Hercon Petroleums
20,000
Highland Bell
120,000
Jodee Explorations
22,000
Mattagami Lake Mines
5,000
Sheep Creek Mines
3,500
February
Endako Mines
26,000
Hercon Petroleums
20,000
Highland Bell
121,000
Jodee Explorations
20,000
Mattagami Lake Mines
5,000
March
Endako Mines
24,500
Hercon Petroleums
20,000
Highland Bell
122,100
Jodee Explorations
20,000
Mattagami Lake Mines
8,900
April
Copper Ridge Mines
50,000
Endako Mines
25,000
Hercon Petroleums
20,000
Highland Bell
122,100
Jodee Explorations
40,000
Mattagami Lake Mines
10,000
May
Copper Ridge Mines
50,000
Endako Mines
25,000
Hercon Petroleums
20,000
Highland Bell
140,000
Jodee Explorations
65,000
Mattagami Lake Mines
10,000
June
Copper Ridge Mines
50,000
Endako Mines
25,000
Granduc Mines
18,000
Hercon Petroleums
20,000
Highland Bell
140,000
Jodee Explorations
65,000
Leitch Gold Mines
15,000
Mattagami Lake Mines
10,000
Minex Development
2,000
Noland Mines
20,000
July
Copper Ridge Mines
60,000
Endako Mines
25,000
Granduc Mines
20,000
Hercon Petroleums
20,000
Highland Bell
140,000
Jodee Explorations
65,000
Leitch Gold Mines
30,000
Mattagami Lake Mines
10,000
Minex Development
2,000
Noland Mines
20,000
Windfall Oils & Mns
30,000
August
Copper Ridge Mines
20,000
Endako Mines
25,000
Hercon Petroleums
19,000
Highland Bell
140,000
Jodee Explorations
65,000
Leitch Gold Mines
30,000
Mattagami Lake Mines
6,000
New Taku Mines
10,000
Noland Mines
20,000
Windfall Oils & Mns
30,000
September
Copper Ridge Mines
20,000
Endako Mines
23,500
Hercon Petroleums
9,000
Highland Bell
127,700
Jodee Explorations
65,000
New Taku Mines
4,000
Noland Mines
20,000
Windfall Oils & Mns
30,000
October
Copper Ridge Mines
20,000
Endako Mines
23,500
Hercon Petroleums
9,000
Highland Bell
25,000
Jodee Explorations
65,000
New Taku Mines
4,000
Noland Mines
20,000
Windfall Oils & Mns
30,000
November
Stocks held at end of October delivered to Merrill Lynch, Pierce, Fenner & Smith
account No. 601 11076.
December
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
127,700
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
1965
January
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
128,500
Jodee Explortns Ltd
65,000
Noland Mines Ltd.
20,000
Windfall Oils Mines
30,000
February
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
March
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd.
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
April
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
May
Copper Ridge Mns Ltd
5,000
Endako Mines Ltd
23,500
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
June
Copper Ridge Mns Ltd
500
Endako Mines Ltd
19,100
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
20,000
Windfall Oils Mines
30,000
July
Copper Ridge Mns Ltd
500
Endako Mines Ltd
13,000
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Noland Mines Ltd
16,000
Windfall Oils Mines
30,000
August
Copper Ridge Mns Ltd
500
Endako Mines Ltd
12,200
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Utica Mines Ltd
5,000
Windfall Oils Mines
30,000
September
Copper Ridge Mns Ltd
500
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Utica Mines Ltd
5,000
Windfall Oils Mines
30,000
October
Copper Ridge Mns Ltd
500
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Utica Mines Ltd
5,000
Windfall Oils Mines
30,000
November
Brett Oil & Gas Ltd
150,000
Copper Ridge Mns Ltd
500
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,000
Jodee Explortns Ltd
65,000
Utica Mines Ltd
5,000
Windfall Oils Mines
29,000
December
Brett Oil & Gas Ltd
133,500
Copper Ridge Mns Ltd
500
Endako Mines Ltd.
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,200
Jodee Explortns Ltd
65,000
Windfall Oils Mines
25,000
1966
January
Brett Oil & Gas Ltd
144,750
Copper Ridge Mns Ltd
500
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd.
130,200
Jodee Explortns Ltd
65,000
Scurry Rainbw PV3 50
1,000
Windfall Oils Mines
25,000
February
Brett Oil & Gas Ltd
144,750
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,200
Jodee Explortns Ltd
65,000
Scurry Rainbw PV3 50
1,000
Windfall Oils Mines
25,000
March
Brett Oil & Gas Ltd
32,250
Endako Mines Ltd
12,300
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,200
Jodee Explortns Ltd
65,000
Windfall Oils Mines
25,000
April
Brett Oil & Gas Ltd
27,750
Brit Newfndlnd Corp
500
Endako Mines Ltd
9,400
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,200
Jodee Explortns Ltd
67,000
Windfall Oils Mines
25,000
May
Brett Oil & Gas Ltd
27,250
Endako Mines Ltd
4,600
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
130,200
Jodee Explortns Ltd
67,000
Windfall Oils Mines
25,000
June
Brett Oil & Gas Ltd
27,250
Endako Mines Ltd
400
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
129,700
Jodee Explortns Ltd
67,000
Windfall Oils Mines
25,000
July
Brett Oil & Gas Ltd
27,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
129,700
Jodee Explortns Ltd
67,000
August
Brett Oil & Gas Ltd
27,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
131,400
Jodee Explortns Ltd
67,000
September
Brett Oil & Gas Ltd
27,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd. 129,900
Jodee Explortns Ltd
67,000
Venus Mines Ltd
10,000
Windfall Oils Mines
25,000
October
Brett Oil & Gas Ltd
27,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
127,900
Jodee Explortns Ltd
67,000
Venus Mines Ltd
10,000
Windfall Oils Mines
25,000
November
Brett Oil & Gas Ltd
27,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,400
Jodee Explortns Ltd
67,000
Venus Mines Ltd
10,000
Windfall Oils Mines
25,000
December
Brett Oil & Gas Ltd
21,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
120,000
Jodee Explortns Ltd
67,000
Murphy Oil Ltd
300
Murphy Oil Corp
700
Venus Mines Ltd
10,000
1967
January
Brett Oil & Gas Ltd
21,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
118,500
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Venus Mines Ltd
8,745
February
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
118,500
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Venus Mines Ltd
8,745
March
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
118,500
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
2,000
April
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
118,200
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
2,000
Union Oil Co CDA Ltd
100
May
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,700
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Stanrock Uran Mines
5,000
Union Oil Co CDA Ltd
100
June
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,700
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Scurry Rainbw PV3 50
400
Stanrock Uran Mines
5,000
July
Brett Oil & Gas Ltd
101,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,700
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
August
Brett Oil & Gas Ltd
96,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,700
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
September
Brett Oil & Gas Ltd
96,250
Dome Petroleum Ltd
375
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
117,700
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Ranger Oil CDA Ltd
5,600
October
Ranger Oil CDA RTS
600
Brett Oil & Gas Ltd
96,250
Dome Petroleum Ltd
375
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Ranger Oil CDA Ltd
5,600
November
Ranger Oil CDA RTS
600
Brett Oil & Gas Ltd
96,250
Dome Petroleum Ltd
375
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Ranger Oil CDA Ltd
5,000
December
Ranger Oil CDA RTS
600
Alminex Ltd
200
Brett Oil & Gas Ltd
36,250
Dome Petroleum Ltd
375
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
1,000
Provo Gas Prod Ltd
3,000
Ranger Oil CDA Ltd
5,000
1968
January
Alminex Ltd
200
Brett Oil & Gas Ltd
86,250
Dome Petroleum Ltd
375
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Murphy Oil Ltd
500
Provo Gas Prod Ltd
3,000
Ranger Oil CDA Ltd
5,000
February
Alminex Ltd
200
Brett Oil & Gas Ltd
81,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Ranger Oil CDA Ltd
5,000
March
Alminex Ltd
200
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Ranger Oil CDA Ltd
5,000
April
Alminex Ltd
200
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
115,000
Jodee Explortns Ltd
117,000
Ranger Oil CDA Ltd
5,000
May
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
106,000
Jodee Explortns Ltd
117,000
Ranger Oil CDA Ltd
1,800
June
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
102,000
Jodee Explortns Ltd
117,000
July
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
102,000
Jodee Explortns Ltd
117,000
August
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
102,000
Jodee Explortns Ltd
117,000
September
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
100,900
Jodee Explortns Ltd
117,000
October
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
100,900
Jodee Explortns Ltd
117,000
November
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
100,900
Jodee Explortns Ltd
117,000
December
Brett Oil & Gas Ltd
76,250
Hercon Petroleum Ltd
9,000
Highland Bell Ltd
70,200
Jodee Explortns Ltd
117,000
*162 Petitioner left all of his stock with the brokers to be used as collateral for his margin accounts. Petitioner paid interest to the brokerage firms on the margin accounts for the amount of money he borrowed. The following schedule shows the interest paid on the total amount which petitioner borrowed from the two brokerage firms and the total interest paid by petitioner on all borrowed funds in the years 1963 through 1968: Year
Total interest paid to the two brokerage firms
Total interest on all borrowed funds 1963
$13,634.16
$ 16,230.09
1964
32,837.75
37,292.07
1965
35,131.00
39,391.80
1966
28,654.95
30,992.28
1967
29,389.00
33,162.95
1968
35,371.12
38,481.44
Some of the interest charged on petitioner's brokera Some of the interest charged on petitioner's brokerage accounts was on cash which he withdrew from those accounts for the payment of an interest equalization tax, and for other purposes which are not disclosed in the record. During the years 1963 through 1968 petitioner had the following income from dividends: Year
Dividend income 1963
$20,410.31
1964
24,022.25
1965
36,675.00
1966
34,305.97
1967
24,131.90
1968 27,385.00
Total $166,930.43
*163 The following schedule summarizes the minimum and maximum debit balance in petitioner's accounts with James Richardson & Sons and Merrill Lynch, Pierce, Fenner & Smith, Inc ., for the years indicated: Year
Minimum debit
Maximum debit 1963
$108,252.23
$ 334,077.54
1964
295,513.02
945,104.35
1965
443,482.40
653,385.72
1966
374,372.08
551,769.64
1967
364,204.40
504,692.20
1968
107,328.89
642,392.58
The following schedule summarizes the purchases and sales of stock and securities by petitioner for the years 1963 through 1968: Year
No. of sales transactions
Shares sold
Dollar volume of sales transactions 1963
Short-term
2
4,400
$ 17,600.00
Long-term 9
60,835
60,909.00
11
65,235
78,509.00
1964
Short-term
9
145,200
492,785.00
Long-ter m 4
32,800
99,282.00 13
178,000
592,067.00
1965
Short-term
3
11,000
91,763.00
Long-term 4
40,800
17 7,364.00
7
51,800
269,127.00
1966
Short-term
5
28,200
86,903.00
Long-term 8
49,258
224,529.00
13
7 7,458
311,432.00
1967
Short-term
15
33,400
380,552.46
Long-term 2
38,745
11,624.25
17
72,145
392,176.71
1968
Short-term
7
12,700
531,101.86
Long-term 7
63,900
441,719.81
14
76,600
972,821.67
*164 In 1967 petitioner also had four short-term commodity sales transactions and during 1968 had six such transactions involving a dollar volume of $313,644.50 and $785,981.25, respectively. During the years 1963 through 1968 petitioner rarely sold stock short. On his Federal income tax returns for the years 1963 through 1968, petitioner reported the following capital gains and losses: Year
Gains
Losses 1963
$24,019.54
1964
9,624.20
1965
$106,158.35
1966
18,644.83
1967
40,702.02
1968
156,335.73
These figures of capital gains and losses are after adjustment for loss carryovers from previous years and gains and losses from commodity futures transactions. They also include both short-term capital gains and long-term capital gains. Petitioner considered the stock of Highland Bell, Ltd., as well as that of Mattagami Lake Mines and Leitch Gold Mines in which Highland Bell, Ltd., held an interest to be good investments. During 1963 through 1968 petitioner subscribed to various financial publications. Generally, petitioner would travel from his home to Seattle, Washington several days each week, and while in Seattle, he would go to brokerage *165 offices to observe the activity of the stock market and consult with brokers. Petitioner went to Vancouver, British Columbia at least once each month. He would attend meetings of the board of directors of Highland Bell, Ltd., and he would consult with brokers, geologists, and mining engineers relative to Canadian mining stock. Petitioner on his Federal income tax returns listed his occupation in all of the years 1963 through 1968 as an attorney. Petitioner filed a Schedule C, "Profit (or Loss) from Business or Profession," showing his gross and net income from his practice of law, and in some years filed a Schedule C in connection with oil operations. Petitioner during the years 1963 through 1968 reported the following gross and net income from his legal practice: Year
Gross income
Net income 1963
$4,460.60
$ 3,232.50
1964
1,380.35
(515.25)
1965
2,532.18
1,168.40
1966
1,233.40
442.69
1967
2,299.98
1,235.87
1968
407.80
(338.83)
Petitioner filed no Schedule C with any of his Federal income tax returns with respect to any business of trading in securities. Petitioner did not maintain a separate bank account for his stock market activities. *166 He maintained no office or personnel to assist him with these activities. On his 1967 income tax return petitioner, under miscellaneous income, claimed a loss carryover in the amount of $22,737.17, explaining this claimed loss carryover as follows: This is derived from 1963 loss of $22,418.66, which exhausts the loss to be carried over from that year, and $318.51 from loss of $39,355.76 for 1964, leaving a balance of 1964 loss to be carried over in the future in the sum of $39,037.25, with a loss also as yet unused for 1965 in the sum of $4,111.41. On his 1968 income tax return petitioner claimed a loss carryover under miscellaneous income in the amount of $56,760.26, with the following explanation: This is derived from unused loss from 1964 in the sum of $39,037.25, plus loss of $4,111.41 for 1965, plus loss of $13,611.60 for 1966. Use of this loss carryover in the sum of $56,760.26 now exhausts all previous losses which could be carried over. Respondent in his notice of deficiency disallowed petitioner's net operating loss deductions claimed for 1967 and 1968 with the following explanation: On your income tax returns for 1967 and 1968 you claimed net operating loss *167 deductions of $22,737.17 and $56.760.26 for the respective years. The claimed net operating loss deductions arose from carryover of net operating losses claimed in the years 1963, 1964, 1965 and 1966. It is determined that there is no net operating loss carryover from 1963, 1964, 1965 and 1966 within the meaning of section 172 of the Internal Revenue Code. Therefore, the net operating loss deductions claimed are determined to be unallowable. For further details see Exhibit A attached. OPINION Section 172 provides for the deduction of net operating loss carryovers and carrybacks. Section 172(c) defines the term "net operating loss" for a taxable year to mean the excess of deductions over gross income computed with the modifications stated in subsection (d). One of the modifications as provided in section 172(d) (4) is that in the case of a taxpayer other than a corporation, the deductions allowable which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. Petitioner, of course, was entitled to and did deduct the interest he paid to the brokerage *168 firms on his margin accounts as well as interest he paid on other borrowings in each of the years 1963 through 1968. However, as both parties recognize, unless petitioner was engaged in a trade or business of being a trader in securities, he is not entitled, in computing his loss carryovers for the years 1963 through 1966, to deduct the interest paid to purchase securities as a business expense and would be allowed to deduct this interest only to the extent of his gross income which is not derived from a trade or business. It is petitioner's position that he is not limited in his deduction of interest paid to purchase and carry stock during the years 1963 through 1968 to the amount of gross income not derived from his trade or business since he paid this interest in connection with his business of being a trader in stock. Respondent takes the position that petitioner was not engaged in a business of a trader in stock but was merely an investor in stock and that the interest which he paid to purchase and carry stock was not a trade or business expense. Beginning with early cases, litigation has arisen concerning whether a taxpayer who purchased, held, and sold stock was engaged *169 in a trade or business of being a trader in stock or was merely an investor in stock. The leading case in this field is Higgins v. Commissioner, 312 U.S. 212 (1941), which involved a taxpayer who resided in France and kept an office in the United States to handle the bookkeeping with respect to his activities in stock. The taxpayer would direct the activities with respect to his securities by telephone, mail, and cable. He primarily sought permanent investments but did make certain changes in his portfolio. His United States office kept records, received securities, interest and dividend checks, made deposits, forwarded weekly and annual reports and undertook generally the care of the investments as the taxpayer instructed. In that case the Court stated: To determine whether the activities of a taxpayer are "carrying on a business" requires an examination of the facts in each case. As the Circuit Court of Appeals observed, all expenses of every business transaction are not deductible. Only those are deductible which relate to carrying on a business. The Bureau of Internal Revenue has this duty of determining what is carrying on a business, subject to reexamination *170 of the facts by the Board of Tax Appeals and ultimately to review on the law by the courts on which jurisdiction is conferred. The Commissioner and the Board appraised the evidence here as insufficient to establish petitioner's activities as those of carrying on a business. The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board. Its conclusion is adequately supported by this record, and rests upon a conception of carrying on business similar to that expressed by this Court for an antecedent section. [Footnotes omitted.] Subsequent to the decision in Higgins v. Commissioner, supra, Congress amended the Internal Revenue Code to allow taxpayers to deduct expenses incurred in connection with transactions entered into for profit. Since this amendment, the number of cases dealing with whether a deduction is incurred in connection with a trade or business has not been large since there are *171 now only a few sections of the Code that limit deductions to those incurred in connection with carrying on a trade or business. However, there have been some recent cases in this area. In Edward A. Neuman De Vegvar, 28 T.C. 1055 (1957), we held that the taxpayer who was a nonresident alien was not engaged in the trade or business of a trader in securities or commodity futures in the United States within the meaning of section 211(b), I.R.C. 1939. In that case we pointed out the number and amount of the taxpayer's purchases and sales and the amount that involved securities which had been held for a period of 1-1/2 to 5 years. We called attention to the fact that the instructions had been given to the brokers by the taxpayer's attorney and that the number of days on which such instructions had been given ranged from 5 to 28 even though in one year the number of individual sales was 257 and the number of purchases in one year was as high as 199. We concluded that the taxpayer's activities were not sufficiently extensive over the years involved to qualify as a trade or business. In so holding we relied on Chang Hsiao Liang, 23 T.C. 1040 (1955), and distinguished *172 the case of Fernand C. A. Adda, 10 T.C. 273 (1948), affirmed 171 F.2d 457 (C.A. 4, 1948), certiorari denied 336 U.S. 952 (1949). The Adda case which we distinguished involved transactions by a nonresident alien in commodity futures. The Liang case involved a nonresident alien who held securities of an investment character, diversified both as to type and industry. In that case we found the distinction between an investment account and a trading account to be that "in the former, securities are purchased to be held for capital appreciation and income, usually without regard to short-term developments that would influence the price of the securities on the daily market. In a trading account, securities are bought and sold with reasonable frequency in an endeavor to catch the swings in the daily market movements and profit thereby on a short-term basis." After reviewing the facts we concluded in the Liang case that the taxpayer's activities with respect to the purchase and sale of securities were not sufficient in frequency and type of securities purchased and sold to constitute the carrying on of a trade or business as a trader in securities. *173 More recently, the Court of Claims in the case of Wilson v. United States, 376 F.2d 280, 293 (1967), held that even though the portfolio of common stock owned by the Wilsons averaged about $700,000 during the period 1958 to 1961, and the Wilsons devoted a substantial amount of time to the performance of research on stock market conditions and trends and a substantial amount of time during each week to activities connected with the purchase and sale of stock, their activities were not sufficient to be classed as engaging in a trade or business. The Court in this respect stated at 293: It is my opinion that the investment expenses of Mr. and Mrs. Wilson during the period 1958-1961 were not paid or incurred in carrying on a "trade or business." In this connection, the Supreme Court has said that "investing is not a trade or business." Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 202, 83 S. Ct. 1168, 1174, 10 L. Ed. 2d 288 (1963). Consequently, managing one's own investments in securities is not the carrying on of a trade or business, irrespective of the extent of the investments or the amount of time required to perform the managerial functions. *174 Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 218, 61 S. Ct. 475, 85 L. Ed. 783 (1941). See also Werner Abegg, 50 T.C. 145, 154 (1968), affirmed 429 F.2d 1209 (C.A. 2, 1970), certiorari denied 400 U.S. 1008 (1971). After we have considered all of the facts in this case in the light of the decisions with respect to the distinctions between an investor and a trader, we conclude that petitioner was not engaged in the business of being a trader in stock during any of the years 1963 through 1968. In reaching this conclusion we have considered all of the facts in the record including petitioner's own conclusion in his testimony that he had intended to engage in the trade or business of being a trader in stock .In reaching this conclusion we have considered the amount of time petitioner expended in investigating Canadian mining stocks which he stated were the stocks in which he intended to be a trader and the relatively small number of transactions which petitioner conducted in stock and the number which involved long-term gains or losses. We have also considered the amount of petitioner's total stock investment which *175 was in Highland Bell, Ltd., which petitioner admitted that he held as an investment stock and also the number of shares which petitioner held in other companies over long periods which appear to have been held for investment purposes. As the schedules in our findings show, in addition to Highland Bell, Ltd., petitioner held shares of Hercon Petroleums, Ltd., Jodee Explorations, Inc., and Brett Oil & Gas, Ltd., for periods of 3 to 6 years. In our view this is the activity of an investor and though a trader may be carrying on a trade or business, an investor is not, even though as stated in Wilson v. United States, supra, his investments may be extensive. Managing one's investments, as distinguished from being a trader in stocks, is not a trade or business. Petitioner testified that he went approximately once a month to Canada to investigate Canadian mining stock, and the record is reasonably clear that these monthly trips were in conjunction with his service as a director of Highland Bell, Ltd. Petitioner testified that he went 3 or 4 days a week to Seattle, Washington to observe how the stock market was doing and sometimes to talk to brokers. However, petitioner *176 makes no claim that he had sufficient activities in stocks of United States corporations to constitute a business of being a trader in securities. Also, he testified that he put little reliance on advice from brokers. It is difficult, therefore, to connect his trips to Seattle with his contention that he was engaged in the trade or business of being a trader in Canadian mining stock. His trips to Seattle indicate his general interest in the stock market, but this is true of many individuals who have retired from the active practice of a profession. On the basis of this record as a whole petitioner's activities in connection with the purchase and sale of stock do not rise to the level of a trade or business but rather indicate that petitioner is an investor. Petitioner primarily relies on Kales v. Commissioner, 101 F.2d 35 (C.A. 6, 1939), reversing 34 B.T.A. 1046 (1936). The Kales case involved a taxpayer who purchased and sold stocks and bonds in an aggregate amount of close to $12 million and was actively engaged in transferring investments from stocks to bonds. It is completely distinguishable on its facts from the instant case. Furthermore, the Kales *177 case was decided prior to the decision of the Supreme Court in Higgins v. Commissioner, supra, though the Kales case recognized the issue as one of fact depending on the evidence in the particular case. Petitioner also relies on Alice duPont Ortiz, 42 B.T.A. 173, 185 (1940). Our holding that the taxpayer in the Ortiz case was engaged in the business of being a trader in securities was reversed by the United States Court of Appeals for the Third Circuit, sub nom, Helvering v. Wilmington Trust Co., 124 F.2d 156 (1941); and although the decision of the Third Circuit was reversed by the Supreme Court, 316 U.S. 164 (1942), the reversal was on another issue. The activities of the taxpayer in the Ortiz case were much more extensive than those of petitioner in this case. We conclude petitioner was merely an investor in the stock market and was not engaged in the business of being a trader in stock during the years 1963 through 1966. Section 162(e) (1) [2] allows a deduction for expenses paid in direct connection with appearances before or statements to or sending communications to committees or members of Congress with respect to *178 legislation or proposed legislation of direct interest to the taxpayer if such expenses are paid or incurred in carrying on a trade or business. Petitioner's expenses in connection with attempting to have the interest equalization tax repealed, which he incurred in 1967 and 1968 were incurred in connection with legislation of interest to him because of his foreign stock activities, which activities he engaged in for profit. However, for the same reasons that we concluded that petitioner was not engaged in the trade or business of being a trader in stock during the years 1963 through 1966, we conclude that he was not engaged in such a trade or business in 1967 or 1968. Therefore, as both parties recognize, his lobbying expenses incurred and paid by him in the years 1967 and 1968 are not deductible. *179 We decide the two issues before us in favor of respondent but because of other issues disposed of by the parties, Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. Sec. 162(e) Appearances, etc., with Respect to Legislation. - (1) In general. - The deduction allowed by subsection (a) shall include all the ordinary and necessary expenses (including, but not limited to, traveling expenses described in subsection (a) (2) and the cost of preparing testimony) paid or incurred during the taxable year in carrying on any trade or business - (A) in direct connection with appearances before, submission of statements to, or sending communications to, the committees, or individual members, of Congress or of any legislative body of a State, a possession of the United States, or a political subdivision of any of the foregoing with respect to legislation or proposed legislation of direct interest to the taxpayer, or * * * and that portion of the dues so paid or incurred with respect to any organization of which the taxpayer is a member which is attributable to the expenses of the activities described in subparagraphs (A) and (B) carried on by such organization. ↩