T.C. Memo. 1997-379


UNITED STATES TAX COURT


NATHAN BOATNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15742-95.                    Filed August 20, 1997.


<u>Nathan Boatner</u>, pro se.

<u>Jason M. Silver</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $14,625 deficiency in petitioner's 1992 Federal income tax.  After concessions,[1] the issues for decision are:  (1) Whether petitioner was entitled to a business bad debt deduction in 1992 for amounts he advanced to

---

[1] The parties stipulated that if the Court determines that petitioner is entitled to a bad debt expense or ordinary loss for 1992, the maximum amount allowable is $42,436.88.

his wholly owned corporation, James Trading Co., Inc. (James Trading), during 1991 and 1992; (2) whether petitioner was a "dealer", "trader", or "investor" with respect to net losses he sustained from trading securities and/or commodities (securities transactions) on behalf of James Trading during 1992;[2] and (3) whether respondent is estopped from reclassifying petitioner's net losses from securities transactions on behalf of James Trading in 1992 as capital losses.

All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Los Angeles, California, at the time he filed his petition. Petitioner has practiced law in California since 1985.

On August 16, 1990, petitioner filed his 1989 individual Federal income tax return without attaching a Schedule C for his

---

[2] Respondent contends that petitioner was an investor as opposed to a dealer, and therefore petitioner's net losses were capital instead of ordinary. Petitioner deducted expenses from his securities transactions on his Schedule C. In support thereof, petitioner argues that he was in a trade or business. Although petitioner fails to address directly the dealer/trader distinction, we assume that his trade or business argument was intended to encompass an argument for trader classification if we conclude that he was not a dealer.

law practice. On September 19, 1990, respondent requested a completed Schedule C from petitioner. Petitioner sent respondent the requested Schedule C. No audit occurred with respect to petitioner for the 1989 tax year.

Petitioner engaged in securities transactions, in his own name, from 1987 until approximately 1991. In May of 1991, petitioner incorporated James Trading as an S corporation. Petitioner was the sole officer and shareholder of James Trading throughout its existence. After May of 1991, petitioner, on behalf of James Trading, engaged in securities transactions with Lind-Waldock & Co. (Lind-Waldock), Kemper Securities (Kemper), and Dean Witter Reynolds, Inc. (Dean Witter). Petitioner was not a member of any exchange or market dealing in securities or commodities, nor was petitioner a licensed broker of securities or commodities in 1992. Petitioner executed approximately 75 securities transactions during 1992.[3]

James Trading reported net losses from securities transactions of $12,686.54 and $47,129.24 for 1991 and 1992, respectively, on Form 1120S. Petitioner advanced $12,686.54 and $47,129.24 (the advances) in 1991 and 1992, respectively, to James Trading to cover these losses. James Trading gave no collateral for the advances. Petitioner drafted loan agreements

---

[3]   Petitioner's trading refers to the securities and/or commodities trades made on behalf of James Trading.

(the notes) purporting to document the advances as loans from petitioner to James Trading. The notes had no fixed maturity dates or schedules of payments. James Trading made no payments on the notes. James Trading became insolvent and ceased doing business on or about September 15, 1992. Petitioner claimed a bad debt deduction, based on the alleged worthlessness of the notes, in the amount of $57,666 for the 1992 taxable year. Respondent determined that the notes did not constitute a bona fide debt and thus denied petitioner's bad debt deduction.

OPINION

Petitioner claims that the notes became worthless in 1992 when James Trading became insolvent, and therefore he is entitled to a business bad debt deduction in that year. In addition, petitioner claims that the pass-through net losses from James Trading are ordinary losses because petitioner was a "dealer" in securities. Furthermore, petitioner maintains that respondent is estopped from reclassifying his net losses for the year in question as capital losses. Respondent contends that the advances were not bona fide debts and therefore not deductible. Respondent also claims that petitioner was an "investor" during 1992; thus, all losses from securities transactions in that year were capital losses. Finally, respondent contends that respondent is not estopped from reclassifying petitioner's net losses.

Bad Debt Deduction

Generally, taxpayers may deduct the value of bona fide debts owed to them that become worthless during the year. Sec. 166(a). Bona fide debts generally arise from valid debtor-creditor relationships reflecting enforceable and unconditional obligations to repay fixed sums of money. Sec. 1.166-1(c), Income Tax Regs. For purposes of section 166, contributions to capital do not constitute bona fide debts. Kean v. Commissioner, 91 T.C. 575, 594 (1988).

The question of whether transfers of funds to closely held corporations constitute debt or equity must be decided on the basis of all the relevant facts and circumstances. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). Taxpayers generally bear the burden of proving that the transfers constituted loans and not equity investments. Rule 142(a).

Courts look to the following nonexclusive factors to evaluate the nature of transfers of funds to closely held corporations: (1) The names given to the documents evidencing the purported loans; (2) the presence or absence of fixed maturity dates with regard to the purported loans; (3) the likely source of any repayments; (4) whether the taxpayers could or would enforce repayment of the transfers; (5) whether the taxpayers participated in the management of the corporations as a result of the transfers; (6) whether the taxpayers subordinated

their purported loans to the loans of the corporations' creditors; (7) the intent of the taxpayers and the corporations; (8) whether the taxpayers who are claiming creditor status were also shareholders of the corporations; (9) the capitalization of the corporations; (10) the ability of the corporations to obtain financing from outside sources at the time of the transfers; (11) how the funds transferred were used by the corporations; (12) the failure of the corporations to repay; and (13) the risk involved in making the transfers. Calumet Indus. Inc. v. Commissioner, 95 T.C. 257, 285 (1990); Dixie Dairies Corp. v. Commissioner, supra at 493.

These factors serve only as aids in evaluating whether transfers of funds to closely held corporations should be regarded as capital contributions or as bona fide loans. Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968). No single factor is controlling. Dixie Dairies Corp. v. Commissioner, supra at 493. The taxpayer must reasonably expect that the money he advances will be repaid. Arrigoni v. Commissioner, 73 T.C. 792, 799 (1980). Consequently, gifts and capital contributions to a corporation are not bona fide debts. Sec. 1.166-1(c), Income Tax Regs.

Transfers to closely held corporations by controlling shareholders are subject to heightened scrutiny, and labels attached to such transfers by the controlling shareholders

through bookkeeping entries or testimony have limited significance unless these labels are supported by objective evidence. Fin Hay Realty Co. v. United States, supra at 697; Dixie Dairies Corp. v. Commissioner, supra at 495.

Petitioner argues that the advances constituted bona fide business loans that became worthless in 1992. Petitioner claims he is therefore entitled to a business bad debt deduction in 1992. Respondent argues primarily that the advances did not constitute a bona fide loan to James Trading and, therefore, that petitioner should not be allowed a business bad debt deduction under section 166. Alternatively, respondent argues that if any portion of the advances constituted bona fide loans, that portion should be treated as a nonbusiness debt that did not become completely worthless in 1992. We agree with respondent's primary argument.

The fact that repayment of the advances depended upon James Trading's financial success indicates that the advances did not constitute bona fide loans. See Stinnett's Pontiac Serv., Inc. v. Commissioner, 730 F.2d 634, 639 (11th Cir. 1984), affg. T.C. Memo. 1982-314; Estate of Mixon v. United States, 464 F.2d 394, 405 (5th Cir. 1972). Petitioner never demanded repayment of the purported loans. We also find it significant that, in the instant case, there was no repayment schedule or interest rate stated on the face of the notes. Petitioner's failure to demand

repayment (as well as the absence of any form of security) tends to refute the existence of a valid debtor-creditor relationship. Petitioner's testimony regarding the notes was not consistent with the weight of the objective evidence in this case. Based on the record as a whole, we conclude that there was no expectation of repayment, and that the advances do not constitute bona fide loans.[4]

Securities Transactions

Respondent also determined that petitioner was not a "dealer" regarding securities transactions because he had no customers, and therefore the net losses James Trading realized in 1992 were subject to the capital loss limitations of sections 165(f) and 1211(b). Petitioner claims that he was engaged in a trade or business because he had a reasonable expectation of earning a profit. Petitioner further contends that he was either a "dealer" or "trader" regarding securities transactions in 1992 and thus seeks ordinary loss treatment for the net losses incurred during 1992.

Section 165(a) generally provides a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. Section 165(f), however, provides that losses from the sale of capital assets shall be allowed only to

---

[4] Consequently, we need not decide whether any debt would have been a business or nonbusiness debt.

the extent allowed under sections 1211 and 1212.  A capital asset is property held by the taxpayer whether or not it is connected with his trade or business.  Sec. 1221.  Section 1221(1), however, creates an exception to the definition of a capital asset for "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

In determining whether a taxpayer who is purchasing and selling securities is engaged in a trade or business, courts have distinguished between "dealers", "traders", and "investors". King v. Commissioner, 89 T.C. 445, 457 (1987).  A dealer falls within the section 1221(1) exception to capital asset treatment because he deals in property held primarily for sale to customers in the ordinary course of his trade or business.  A trader, on the other hand, holds securities as capital assets whether or not such assets are held in connection with his trade or business. This is so because a trader does not have customers and therefore does not fall within the section 1221(1) exception to capital asset treatment.  King v. Commissioner, supra at 458; Kemon v. Commissioner, 16 T.C. 1026, 1032-1034 (1951).  Consequently, taxpayers, unless they are dealers, generally recognize a capital gain or loss upon the sale or exchange of stock.

For the purposes of section 1221, dealers must have customers.  United States v. Diamond, 788 F.2d 1025, 1029 (4th Cir. 1986).  Petitioner argues that Lind-Waldock, Kemper, and Dean Witter were his customers.  Petitioner, however, offers no proof for this contention.  We find that Lind-Waldock, Kemper, and Dean Witter were not petitioner's customers and that in fact petitioner had no customers.  We hold, therefore, that petitioner was not a dealer.  Thus, the stocks and commodities petitioner purchased and sold were capital assets in his hands, and the net losses from securities transactions were capital losses.

Having determined that petitioner was not a dealer, we must now turn to the question of whether petitioner was engaged in the trade or business of buying or selling stocks.  If so, petitioner was a "trader" as opposed to an "investor".  Unlike an investor, a trader's expenses are deducted in determining adjusted gross income rather than as itemized expenses.  To determine whether a taxpayer who manages his own investments is a trader, we consider, inter alia, the frequency, extent, and regularity of the taxpayer's securities transactions.  Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983); Mayer v. Commissioner, T.C. Memo. 1994-209.  A taxpayer is a trader engaged in carrying on a trade or business of selling securities only if both of the following are true:  (1) The taxpayer's trading activity is substantial, and (2) the taxpayer seeks to catch the swings in

the daily market movements and to profit from these short-term changes rather than to profit from the long-term holding of investments.  See Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989), revg. on another issue, affg. in part and remanding T.C. Memo. 1988-264; Moller v. United States, supra at 813; Purvis v. Commissioner, 530 F.2d 1332, 1334 (9th Cir. 1976), affg. T.C. Memo. 1974-164; King v. Commissioner, supra at 458-459; Liang v. Commissioner, 23 T.C. 1040, 1043 (1955); Mayer v. Commissioner, supra.  The taxpayer's trading activity must be frequent, regular, and continuous to be considered part of a trade or business.  See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Sporadic trading does not constitute a trade or business.  Id.  Furthermore, courts look at whether the taxpayer's securities income is principally derived from frequent and substantial sale of securities rather than from dividends, interest, or long-term appreciation.  Moller v. United States, supra at 813; King v. Commissioner, supra at 458-459; Liang v. Commissioner, supra at 1043.

Petitioner executed approximately 75 securities transactions during 1992.  This level of trading activity falls short of being frequent, regular, and continuous.  See, e.g., Purvis v. Commissioner, supra at 1334 (taxpayer was merely an investor where, among other things, his sales of stock were not regular or continuous).  Petitioner has failed to meet his burden of proof

regarding his level of trading activity. Rule 142(a). We conclude, therefore, that petitioner is an investor regarding his securities transactions and not a trader. As such, petitioner was not conducting a trade or business.

Equitable Estoppel

Petitioner argues that correspondence from respondent requesting further information regarding petitioner's Schedule C expenses constitutes an audit of petitioner's 1989 Federal income tax return. Petitioner contends that respondent is estopped from reclassifying petitioner's net losses for 1992 from securities transactions as ordinary losses because petitioner's securities transactions during 1989 through 1992 were consummated in a similar manner, and respondent accepted petitioner's representation that the securities transactions in 1989 gave rise to ordinary gains.

It is well established that the estoppel doctrine should be applied against the Commissioner with the utmost caution and restraint. Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. in part and revg. in part 32 T.C. 998 (1959), affg. in part and revg. in part First Western Bank & Trust Co. v. Commissioner, 32 T.C. 1017 (1959); Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). Taxpayers must prove at least the following elements before

courts will apply equitable estoppel against the Government:  (1) A false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the true facts; (4) the taxpayer's reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statement of the one against whom estoppel is being claimed.  Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60, supplemented 104 T.C. 417 (1995); see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971); Hudock v. Commissioner, 65 T.C. 351, 363 (1975).  The burden of proof is on the party claiming estoppel against the Government.  Rule 142(a); Hofstetter v. Commissioner, 98 T.C. 695, 701 (1992).

Petitioner has failed to carry his burden of proof.  The correspondence which petitioner cites to support his contention that respondent audited petitioner's 1989 return consists merely of a request for more information and subsequent confirmation that petitioner complied appropriately.  Moreover, respondent sent a letter to petitioner stating that the examination branch took "no action".  Petitioner has provided no evidence to support a claim for equitable estoppel.  Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a former year.  Automobile Club of Mich.

v. Commissioner, 353 U.S. 180 (1957); Harrah's Club v. United States, 228 Ct. Cl. 650, 661 F.2d 203, 205 (1981).  We conclude, therefore, that the Government is not estopped from treating petitioner's 1992 net losses from securities transactions as capital losses.

We have considered all arguments made by petitioner and, to the extent not addressed above, find them to be without merit.

To reflect the foregoing,

Decision will be

entered for respondent.